Haron STEPHENS, Appellant,

v.

The STATE of Texas, Appellee.

No. 914–88.

Court of Criminal Appeals of Texas, En Banc.

May 2, 1990.

Rehearing Overruled Jan. 30, 1991.

---

Michael D. Byck, on appeal only, Lawrence B. Mitchell, on appeal only, Dallas, for appellant.

John Vance, Dist. Atty. and Pamela Sullivan Berdanier and Michael A. Klein, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Opinion on State's Petition for
Discretionary Review

CAMPBELL, Judge.

Appellant was initially convicted by a jury of aggravated rape.[1] He was sentenced to twelve years' confinement in the Texas Department of Corrections.[2] On appeal, the Dallas Court of Appeals found the

---

1. V.T.C.A. Penal, § 21.03, now repealed and superseded by V.T.C.A. Penal, § 22.021. The term sexual assault has now been substituted for that of rape.

2. Now the Texas Department of Criminal Justice, Institutional Division.

evidence insufficient to support the conviction and consequently reversed and ordered a judgment of acquittal. *Stephens v. State*, 683 S.W.2d 23 (Tex.App.—Dallas 1984) (*Stephens I*). This Court affirmed the judgment of the Court of Appeals. *Stephens v. State*, 717 S.W.2d 338 (Tex.Cr. App.1986) (*Stephens II*).[3]

Subsequently, appellant was indicted for the offense of rape of the same victim arising out of the same incident. Appellant filed a pre-trial application for a writ of habeas corpus claiming that the prosecution for the lesser included offense of rape was barred by the Double Jeopardy Clause due to the previous appellate acquittal for aggravated rape [now aggravated sexual assault]. The trial court denied appellant's application for writ of habeas corpus. Subsequently, appellant filed a petition for discretionary review in the Dallas Court of Appeals.

In a published opinion, the Dallas Court of Appeals held that appellant's subsequent indictment for rape after the reversal of his prior aggravated rape conviction violated the Double Jeopardy Clause. *Ex parte Stephens*, 753 S.W.2d 208 (Tex.App.—Dallas 1988) (*Stephens III*). We granted the State's petition for discretionary review to determine[4] whether appellate reversal of appellant's aggravated rape conviction solely on the ground that there was insufficient evidence to prove the aggravating element of the offense bars a subsequent prosecution for the lesser included offense of rape

under the Double Jeopardy Clause.[5] We will affirm.

▄ At the outset, it should be noted that the pretrial writ of habeas corpus is an appropriate remedy to review a double jeopardy claim. *Ex parte Rathmell*, 717 S.W.2d 33, 34 (Tex.Cr.App.1986). In *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), the Supreme Court observed that the preferred procedural vehicle for review of a double jeopardy claim was the writ of habeas corpus since:

> "[T]he rights conferred on a criminal accused by the Double Jeopardy Clause would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction and sentence. To be sure, the Double Jeopardy Clause protects against being twice convicted for the same crime, and that aspect of the right can be fully vindicated on appeal following final judgment, as the Government suggests. However, the Court has long recognized that the Double Jeopardy Clause protects an individual against more than being subjected to double punishments. It is a guarantee against being twice put to *trial* for the same offense."

431 U.S. at 660–61, 97 S.Ct. at 2040–41 (emphasis in original).

The prohibition against double jeopardy is found in the Fifth Amendment to the United States Constitution. A similar provision may be found in Art. I, § 14 of the Texas Constitution. The Fifth Amendment

---

**3.** This Court noted appellant could have been convicted of the lesser included offense of rape if it had been submitted to jury. 717 S.W.2d at 339. However, the trial court refused appellant's request for a charge on the lesser included offense. The State did not respond to or comment on appellant's request.

**4.** This opinion does not purport to answer the question whether the Double Jeopardy Clause would bar a subsequent prosecution if the jury charge had included an instruction on the lesser included offense or if the trial court had erroneously refused the State's request for a lesser included offense instruction.

**5.** We granted the State's petition for discretionary review for the following reasons: (1) it

raises an important question of state and federal law which has not been, but should be, settled by this Court, Tex.R.App.Pro. 200(c)(2); and (2) the justices of the Dallas Court of Appeals have disagreed upon an important question of law necessary to their decision, *Ex parte Stephens*, 753 S.W.2d 208 (Tex.App.—Dallas 1988) (Kinkeade, J., dissenting); Tex.R.App.Pro. 200(c)(5).

The precise issue addressed today has been presented to this Court previously in the case of *Garrett v. State*, 749 S.W.2d 784 (Tex.Cr.App. 1986). This Court initially found that such a subsequent prosecution was barred on double jeopardy grounds; however, that opinion was disavowed as an advisory opinion since the issue was not ripe for review. *Garrett v. State*, 749 S.W.2d 784, 804 (Tex.Cr.App.1986) (opinion on State's Motion for rehearing).

prohibition against double jeopardy is fully applicable to the States through the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 787, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969). Conceptually, the State and Federal double jeopardy provisions are identical. *Phillips v. State,* 787 S.W.2d 391, 393 n. 2 (Tex.Cr.App.1990).

As one commentator has observed, few provisions of the Bill of Rights have been more frequently litigated, but the mere volume of activity has not cast much light upon the meaning of the concept of double jeopardy. J. Sigler, Double Jeopardy: The Development of a Legal and Social Policy (1969). Its hoary antecedents have been traced from Greek and Roman times to its establishment in the common law in England before becoming a part of this Nation's jurisprudence. *Benton v. Maryland,* 395 U.S. 784, 795, 89 S.Ct. 2056, 2063, 23 L.Ed.2d 707 (1969); *see also Ex parte Rathmell,* 717 S.W.2d 33 (Tex.Cr.App.1986) (Teague, J., concurring and dissenting). "While the Clause itself simply states that no person shall 'be subject for the same offense to be twice put in jeopardy of life or limb' the decisional law in the area is a veritable Sargasso Sea which could not fail to challenge the most intrepid judicial navigator." [6] *Albernaz v. United States,* 450 U.S. 333, 343, 101 S.Ct. 1137, 1144, 67 L.Ed.2d 275 (1981). With these observations, it is necessary to emphasize what our analysis does or does not involve.

■ An initial question before this Court is whether aggravated rape and rape are the "same" offense for the purpose of the Double Jeopardy Clause. In *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Supreme Court established the test for determining whether a "second" statutorily defined offense is the "same" for purposes of double jeopardy. The Supreme Court held:

> The applicable rule is where the same act or transaction constitutes a violation of

two distinct statutory provisions the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact that the other does not.

284 U.S. at 304, 52 S.Ct. at 182. Although the Supreme Court has since made it clear that *Blockburger* is the principal statutory construction test for determining whether a successive prosecution is barred, *Illinois v. Vitale,* 447 U.S. 410, 416, 100 S.Ct. 2260, 2265, 65 L.Ed.2d 228 (1980), the Court also reaffirmed the "same incidents" test contained in *In re Nielsen,* 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889).

Turning to the instant case, in 1982 at the time of appellant's trial, V.T.C.A. Penal Code, § 21.02 defined the elements of rape as: (1) a person; (2) has sexual intercourse; (3) with a female; (4) not his wife; (5) without the female's consent. A person committed aggravated rape if, in addition to committing rape as defined in V.T.C.A. Penal Code, § 21.02, he committed any of the aggravating acts listed in V.T.C.A. Penal Code, § 21.03(a)(1–5). As is invariably true of greater and lesser included offenses, the lesser offense—rape—requires no proof beyond that of the greater—aggravated rape. *Brown v. Ohio,* 432 U.S. 161, 168, 97 S.Ct. 2221, 2226, 53 L.Ed.2d 187 (1977). The greater offense is therefore by definition the "same" as any lesser offense included in it. *Id.* Clearly, under *Blockburger,* rape is the "same" offense as aggravated rape for purposes of the Double Jeopardy Clause.

■ The central issue in this case was reserved by the Supreme Court in *Greene v. Massey,* namely, whether appellate reversal of a conviction for a greater offense precludes retrial for a lesser offense. *Greene v. Massey,* 437 U.S. 19, 25 n. 7, 98 S.Ct. 2151, 2154–55, 57 L.Ed.2d 15 (1978). Our analysis begins with the literal language of the Fifth Amendment, that no

6. *See e.g., Beverly v. Jones,* 854 F.2d 412 (11th Cir.1988), *cert. denied,* 490 U.S. 1082, 109 S.Ct. 2104, 104 L.Ed.2d 665 (1989); *Beverly v. State,* 497 So.2d 530 (Ala.1986); *State v. Simons,* 549 So.2d 785 (Fla.Dist.Ct.App.1989); *State v. McBride,* 504 So.2d 840 (La.1987); *State v. Walker,* 514 So.2d 602 (La.Ct.App.1987); *State v.* *DeLuca,* 108 N.J. 98, 527 A.2d 1355, *cert. denied,* 484 U.S. 944, 108 S.Ct. 331, 98 L.Ed.2d 358 (1987); *State v. Muniz,* 228 N.J.Super. 492, 550 A.2d 487 (App.Div.1988); *Commonwealth v. Williams,* 379 Pa.Super. 538, 550 A.2d 579 (1988).

person "be subject for the *same* offence to be twice put in jeopardy of life or limb." [7]

■ Three separate guarantees are recognized in the Double Jeopardy Clause: (1) protection against reprosecution for the same offense following an acquittal; (2) protection against reprosecution for the same offense following a conviction; and (3) protection against multiple punishments for the same offense. *Albernaz v. United States,* 450 U.S. at 343, 101 S.Ct. at 1144–45; *Illinois v. Vitale,* 447 U.S. 410, 415, 100 S.Ct. 2260, 2264, 65 L.Ed.2d 228 (1980); *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969); *Ex parte Peterson,* 738 S.W.2d 688, 689 (Tex.Cr.App.1987). It is the first guarantee against successive prosecutions following an acquittal that is implicated in the instant case.

■ Where successive prosecutions are at issue, the guarantee against being placed "twice in jeopardy" represents a constitutional policy of finality of judgments for the defendant's benefit. *Brown v. Ohio,* 432 U.S. 161, 164, 97 S.Ct. 2221, 2224, 53 L.Ed.2d 187 (1977); *United States v. Jorn,* 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971). The United States Supreme Court in *Benton v. Maryland,* observed:

> Today, every State incorporates some form of the prohibition in its constitution or the common law. As this Court put it in *Green v. United States,* 355 U.S. 184, 187–188 [78 S.Ct. 221, 223–224, 2 L.Ed.2d 199] (1957), "[t]he underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence is that the State with all of its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."

395 U.S. at 795–96, 89 S.Ct. at 2063. At the heart of this policy is the concern that permitting the sovereign freely to subject the citizen to a second trial for the same offense would arm Government with a potent weapon of oppression. *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 569, 97 S.Ct. 1349, 1353, 51 L.Ed.2d 642 (1977).

■ It is well-settled that upon conviction or acquittal in a trial court the Double Jeopardy Clause bars retrial for the "same" offense. *See Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977). The Double Jeopardy Clause also precludes a second trial once a reviewing court has determined that the evidence is insufficient to sustain the verdict. *Bullington v. Missouri,* 451 U.S. 430, 442, 101 S.Ct. 1852, 1860, 68 L.Ed.2d 270 (1981); *Burks v. United States,* 437 U.S. 1, 16, 98 S.Ct. 2141, 2149–50, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. at 24, 98 S.Ct. at 2154.

In *In re Nielsen,* 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889), the Supreme Court addressed the issue of whether the Double Jeopardy Clause barred a subsequent prosecution for a lesser included offense following a conviction for the greater. In dicta, the Supreme Court commented on the effect of an acquittal on a subsequent prosecution:

> In Mr. Wharton's treatise on Criminal Law, vol. 1, § 560, the rule is stated as follows, to wit: *"an acquittal or conviction for a greater offence included is a bar to a subsequent indictment for a minor offence included in the former, wherever, under the indictment for the greater offence, the defendant could have been convicted of the less;"* and he instances several cases in which the rule applies; for example, "an acquittal on an indictment for robbery, burglary, and larceny, may be pleaded to an indictment for larceny of the same goods, because upon the former indictment the defendant might have been convicted of the

---

7. This analysis does not implicate an application of the doctrine of collateral estoppel as is implicitly found in the Double Jeopardy Clause.

*Garrett,* 749 S.W.2d at 791 (citing *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970)).

larceny." *"If one be indicted for murder, and acquitted on that indictment, he cannot be again indicted for manslaughter." "If a party charged with the crime of murder, committed in the perpetration of a burglary, be generally acquitted on that indictment, he cannot afterwards be convicted of a burglary with violence, under Wm.IV and 1 Vic. c.86, 2, as the general acquittal on the charge of murder would be an answer to that part of the indictment containing the allegation of violence."*

131 U.S. at 189, 9 S.Ct. at 676 (emphasis added); *see also United States v. Ball*, 163 U.S. 662, 670–71, 16 S.Ct. 1192, 1194–95, 41 L.Ed. 300 (1896). The Court acknowledged there was some contrary authority that indicated that retrial on a lesser included offense might not be barred in the case of an acquittal of a greater offense. 131 U.S. at 190, 9 S.Ct. at 677. However, these observations offer little solace for the State's position in the instant case in light of the policy concerns expressed in the Supreme Court's more recent decisions.

In *Tibbs v. Florida*, the Supreme Court explained that the prohibition against successive prosecutions contained in *Burks* and *Greene* rest upon two closely related policies:

First, the Double Jeopardy Clause attaches special weight to judgments of acquittal. A verdict of not guilty, whether rendered by the jury or directed by the trial judge, absolutely shields the defendant from retrial. A reversal based on the insufficiency of the evidence has the same effect because it remains that no rational factfinder could have voted to convict the defendant.

Second, *Burks* and *Greene* implement the principle that "[t]he Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." *Burks, supra,* at 11 [98 S.Ct. at 2147]. *This prohibition, lying at the core of the Clause's protections, prevents the State from honing its trial strategies and perfecting its evidence through successive attempts at convic-*tion. *Repeated prosecutorial sallies would unfairly burden the defendant and create a risk of conviction through sheer governmental perseverance.* See *Green v. United States,* 355 U.S. 184, 187–188 [78 S.Ct. 221, 223–224, 2 L.Ed.2d 199] (1957); *United States v. DiFrancesco,* 449 U.S. [117] at 130 [101 S.Ct. 426 at 433, 66 L.Ed.2d 328 (1980)]. For this reason, when a reversal rests upon the ground that the prosecution has failed to produce sufficient evidence to prove its case, the Double Jeopardy Clause then bars the prosecutor from making a second attempt at conviction.

457 U.S. 31, 41–42, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652 (1982) (emphasis added).

Turning to the instant case, the State contends that since it did not oppose appellant's request for a lesser included offense instruction, that it should not be penalized for the trial court's failure to include the lesser offense in the charge to the jury. In its brief, the State concedes that Texas law provides for consolidating greater and lesser included offenses by including both in the charge to the jury on the trial of the greater offense. *See also* V.A.C.C.P. §§ 37.08; 37.09. However, the State contends that under *Jeffers v. United States,* 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977), the State is not precluded from reprosecuting a defendant so long as it does not affirmatively impair the appellant's double jeopardy protection.

In *Jeffers*, the defendant opposed the consolidation of the two offenses with which he was charged, but he failed to object on double jeopardy grounds. The Court held that the defendant had thus waived his double jeopardy claim. 432 U.S. at 154, 97 S.Ct. at 2218. The Supreme Court observed that: "[t]he considerations relating to the propriety of a second trial obviously would be different if *any action* by the Government contributed to the separate prosecutions on the lesser and greater charges. No hint of that is present in the case before us, *since the Government affirmatively sought trial on the two indictments together."* 432 U.S. at 152–53 n. 20, 97 S.Ct. at 2217 (emphasis added). We

read *Jeffers,* to stand for the proposition that a *defendant* may waive his double jeopardy protections under the Fifth Amendment. *Id.*

In the instant case, the State prosecuted the appellant on the greater offense. Nothing prevented the State from requesting a lesser included offense instruction. *See* V.A.C.C.P. 36.15. By electing to proceed only on the greater offense, the State can hardly claim that it did not contribute to the error. We find that *Jeffers* does not support the State's contention.

The State also contends that the Supreme Court's decision in *Montana v. Hall,* 481 U.S. 400, 107 S.Ct. 1825, 95 L.Ed.2d 354 (1987) is applicable to the instant case. In *Hall,* four days before trial, the defendant moved to have the original indictment charging him with sexual assault dismissed, arguing that because the victim was his stepdaughter he could only be prosecuted for incest. The trial court granted his motion to dismiss the original indictment and he was subsequently indicted for and convicted of incest. The Montana Supreme Court set aside the conviction as violating the ex post facto prohibition because, at the time the crime was committed, the incest statute did not apply to stepchildren. The Montana Supreme Court also held that a subsequent prosecution for sexual assault would be barred by double jeopardy.

The United States Supreme Court reversed the lower court, holding that the defect found in *Hall* was the result of trial error in the jury charge. 481 U.S. at 404, 107 S.Ct. at 1827. Since the reversal by the Montana Supreme Court was based on grounds unrelated to guilt or innocence, a retrial for the same offense was not barred. *Id.* at 403, 107 S.Ct. at 1827. In the instant case, the appellant's conviction was reversed because the evidence was insufficient to prove the aggravating element of the offense. *Stephens,* 717 S.W.2d at 341. A conviction that is reversed because the evidence is insufficient will bar a retrial for the same offense. *See Burks v. United States,* 437 U.S. at 16, 98 S.Ct. at 2149–50.

Next, the State contends that reprosecution of the appellant should not be barred because the appellant was in "continuing jeopardy." The State relies on *Price v. Georgia,* 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970) for the proposition that appellant remained in "continuing jeopardy." This reliance is misplaced. The conviction in *Price* was originally reversed because of trial error. Therefore, the defendant could still be retried. The Supreme Court noted that it had "consistently refused to rule that jeopardy for an offense continues after an acquittal." 398 U.S. at 329, 90 S.Ct. at 1761. A verdict of acquittal is final, ending a defendant's jeopardy. *Green v. United States,* 355 U.S. 184, 188, 78 S.Ct. 221, 223–24, 2 L.Ed.2d 199 (1957). A reversal based on insufficiency of the evidence has the same effect as an acquittal. *Tibbs,* 457 U.S. at 41, 102 S.Ct. at 2218. Accordingly, appellant's jeopardy ended when he secured a reversal of his original conviction based on insufficiency of the evidence. Appellant was placed in jeopardy again when he was reindicted for the "same" offense.[8]

---

**8.** The State also argues that the reversal of appellant's original conviction did not work as an implied acquittal of the lesser offense of rape and thus, retrial should not be barred. The State is correct that the appellant was not impliedly acquitted of rape. However, its reliance on *Morris v. Mathews,* 475 U.S. 237, 106 S.Ct. 1032, 89 L.Ed.2d 187 (1986) is misplaced.

In *Mathews,* the defendant and an accomplice robbed a bank. When the two were apprehended, the accomplice was found dead, an apparent suicide. The defendant pled guilty to aggravated robbery. Subsequently, the defendant admitted to killing his partner. The defendant was later indicted and convicted of aggravated murder, the aggravating factor being the bank robbery. The Ohio Supreme Court found that the conviction was jeopardy barred and reformed the judgment to reflect a conviction for murder pursuant to state statutory authority. The United States Supreme Court affirmed. *Morris v. Mathews,* 475 U.S. 237, 106 S.Ct. 1032, 89 L.Ed.2d 187 (1986).

Unlike the Ohio Supreme Court, this Court does not have the authority to reform a conviction of a greater felony found to be based on insufficient evidence to lesser felony, which the evidence will support. *See generally Morris v. Mathews,* 475 U.S. 237, 106 S.Ct. 1032, 89 L.Ed.2d 187 (1986); *See* Tex.R.App.Pro. 80, formerly V.A.C.C.P. 44.24(b). The instant case rep-

Essentially, the State would have this Court re-examine our opinion in *Stephens II*, and hold that it is improper for an appellate court to reverse on sufficiency grounds without first determining whether there are reversible *trial* errors. The State's argument, in essence, is that the Court of Appeals' reversal of appellant's conviction in *Stephens I* should have been based on the failure of the trial court to give the requested lesser included instruction, transforming the reversal from one based on sufficiency of the evidence to one based on trial error. We find that, while appellant's conviction *might* have been reversed because the jury charge failed to include the timely requested instruction, this Court's final disposition was predicated on the reversal and acquittal by the Court of Appeals due to insufficiency of the evidence, not trial error. *See Stephens II*, 717 S.W.2d at 340 n. 2.

Any opinion by the Court of Appeals as to the propriety of the refusal of the trial court to give a lesser included offense instruction would have been advisory. Even if the State were correct, once a defendant has been acquitted, no matter how "egregiously erroneous" the legal rationale leading to that conclusion might be, the Double Jeopardy Clause would bar a retrial of the appellant. *See Sanabria v. United States*, 437 U.S. 54, 75, 98 S.Ct. 2170, 2184, 57 L.Ed.2d 43 (1978); *Fong Foo v. United States*, 369 U.S. 141, 143, 82 S.Ct. 671, 672, 7 L.Ed.2d 629 (1962).

Finally, the State argues that there are important policy interests that support the position that the appellant should be reprosecuted. The State, with respect to the lesser included offense, argues that a reversal based on insufficiency of the evidence as to the aggravating element should not be accorded the same status as other appellate reversals because the issue of the lesser included offense was never presented to the jury. The State also argues that

society has a legitimate interest in convicting and punishing those who violate its laws. *Illinois v. Somerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). Further, the State argues that the Court of Appeals' decision in *Stephens III* will hinder prosecutors from charging defendants with aggravated crimes for fear of reversal and that defendants will "get away with 'free' lesser included offenses." In its petition for discretionary review, the State argues that "[t]he State is not asking for more than one bite at the apple. The State merely requires a new bite to replace the bite which appellant took away through his successful appeal." We find these arguments unpersuasive.

In *Ashe v. Swenson*, the State's attorney on appeal made the frank acknowledgment that the trial prosecutor had treated the first trial as a dry run: "No doubt the prosecutor felt the state had a provable case on the first charge and, when he lost, he did what every good attorney would do—he refined his presentation in light of the turn of events at the first trial." 397 U.S. at 447, 90 S.Ct. at 1196. The Supreme Court held that this was precisely what the Double Jeopardy Clause prohibits. *Id.* This is no less true when the State, as in the instant case, *has elected* to pursue the greater offense and now seeks to "hone its trial strategies" and perfect its case with a second trial.

The Double Jeopardy Clause bars a second prosecution that would require the accused to "run the gauntlet" again. Therefore, we hold that when a defendant has obtained a reversal of a conviction for a greater offense solely on the ground that there was insufficient evidence to prove the aggravating element of that offense, the Double Jeopardy Clause bars a subsequent prosecution for a lesser included offense.

Accordingly, we find that the appellant's subsequent prosecution for rape would be precluded by the Double Jeopardy Clause.

---

resents a "second" prosecution, unlike *Mathews* which was one proceeding.

The instant case is also distinguishable for other reasons. First, in *Mathews*, the defendant was still in a "continuing" state of jeopardy. Second, the commission of the robbery and the

murder took place in different criminal episodes. Neither required proof of the other to sustain a conviction and, therefore, were not the "same" offense for purposes of the Double Jeopardy Clause. Therefore, the Double Jeopardy Clause did not bar a conviction for murder.

The judgment of the Court of Appeals is affirmed.

McCORMICK, P.J., dissents.

## OPINION ON DENIAL OF STATE'S MOTION FOR REHEARING PETITION FOR DISCRETIONARY REVIEW

McCORMICK, Presiding Judge, dissenting.

The Court overrules the State's motion for rehearing in this cause. The State's legal problems in dealing with Haron Stephens' criminal activity antedates the Court of Appeals' decision in *Stephens v. State*, 683 S.W.2d 23 (Tex.App.–Dallas 1984) (*Stephens I*), and this Court's affirmance of the Court of Appeals' decision in *Stephens v. State*, 717 S.W.2d 338 (Tex.Cr.App.1986) (*Stephens II*). The genesis of those problems was this Court's *first* self-inflicted wound—the decision in *Benson v. State*, 661 S.W.2d 708 (Tex.Cr.App.1982). In *Ex parte Stephens*, 753 S.W.2d 208 (Tex.App.–Dallas 1988) (*Stephens III*), the Court of Appeals held that Stephens' subsequent indictment for the lesser included offense of rape could not proceed to trial because to do so would violate double jeopardy principles. After granting the State's petition for discretionary review, this Court, on original submission, affirmed the judgment of the Court of Appeals. *Ex parte Stephens* (Tex.Cr.App., No. 914–88, delivered May 2, 1990) (*Stephens IV*). *Stephens IV* is the Court's *second* self-inflicted wound. Because I believe *Benson* was wrongly decided and, because I believe a majority of this Court seriously misapprehends and misapplies the double jeopardy principles involved in the present case, I respectfully dissent.

### I.

Both before and after the United States Supreme Court's decisions in *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), it has been my view that the sufficiency of the evidence to support a conviction in a criminal case was to be measured against the penal statutes allegedly violated and not by any other means, such as a trial court judge's instructions to the jury. However, beginning with *Benson v. State*, 661 S.W.2d 708 (Tex.Cr.App.1982), this Court has held that the sufficiency of the evidence to support a conviction must be viewed in light of the instructions the trial court gave to the jury.

In *Stephens II*, a majority of this Court appears to have assumed that Stephens could have been convicted of *aggravated* rape if the jury had been instructed on V.T.C.A., Penal Code, Sections 6.04(b)(1)[1] and/or 7.02(b).[2] Because the State did not request that the jury be instructed pursuant to these subsections of the Penal Code, however, a majority of this Court found the evidence insufficient to support a conviction for *aggravated* rape.

The United States Supreme Court has never imposed on the courts of Texas or those of any other jurisdiction a requirement that the sufficiency of the evidence is to be measured against the trial court's charge. In fact, in *Burks* itself the Court cited *Forman v. United States*, 361 U.S. 416, 80 S.Ct. 481, 4 L.Ed.2d 412 (1960), as being a case where "a conviction was reversed by the Court of Appeals due to an improper instruction to the jury, i.e., trial error as opposed to evidentiary insufficiency." *Burks*, 437 U.S. at 8, 98 S.Ct. at 2145. An examination of *Forman* reflects that

---

**1.** V.T.C.A., Penal Code, Section 6.04(b)(1), provides:

"(b) A person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that:

"(1) a different offense was committed, ..."

**2.** V.T.C.A., Penal Code, Section 7.02(b), provides:

"(b) If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy."

the defendant there was convicted on evidence which was legally insufficient under the trial court's jury instructions, instructions to which the Government failed to object[3]; but, the Supreme Court authorized a retrial because the evidence was sufficient to sustain a conviction under the indictment. And to repeat for emphasis, the Court in *Burks* labeled the unobjected to erroneous jury instructions in *Forman* as "trial error."

Unless and until the United States Supreme Court imposes a *"Benson"* standard on lower courts, I shall continue to dissent from a standard which requires a reviewing court to measure the sufficiency of the evidence against the trial court's jury instructions. See, e.g., *Benson*, 661 S.W.2d at 712, 717–721; *Boozer v. State*, 717 S.W.2d 608 at 613, 617–621 (Tex.Cr.App. 1984); *Marras v. State*, 741 S.W.2d 395 at 411–414 (Tex.Cr.App.1987); *Garrett v. State*, 749 S.W.2d 784 at 795, 804 (Tex.Cr. App.1986). *Benson* and its progeny represent an overreaction by this Court to the Supreme Court's decision in *Burks* and *Greene*. *Benson et al.* unnecessarily impose a state law procedural rule on top of *Burks* and *Greene*, treat cases differently depending on whether a jury or judge is the trier of facts,[4] and unnecessarily authorizes the acquittal of defendants although the evidence shows them to be guilty.[5]

## II.

Had Haron Stephens been tried for aggravated rape and a jury had found him not guilty, then I might agree that the State could not retry him for the lesser included offense of rape. But that is not what happened to Stephens. Stephens was tried and a jury found him *guilty* of aggravated rape. In finding him guilty of this greater offense, the jury *necessarily* found Stephens guilty of the lesser included offense of rape. As the United States Supreme Court stated in *Morris v. Mathews*, 475 U.S. 237 at 245, 106 S.Ct. 1032 at 1037, 89 L.Ed.2d 187 (1986): "The jury did not acquit Mathews of the greater offense of aggravated murder, but found him guilty of that offense and, *a fortiori*, of the lesser included of murder as well."[6] Thus, an

---

3. Remarkably, the Court majority in *Benson*, 661 S.W.2d at 714, and its progeny attach great legal significance to the fact that the State acquiesced in or did not object to the instructions given to the jury or did not request additional instructions. However, in *Forman* the Court stated:

   "The Government now says that through 'inadvertence' it allowed the case to be submitted to the jury on the 'impermissible theory' condemned in our *Grunewald [v. U.S.]* opinion, 353 U.S. [391] at pages 399–406, 77 S.Ct. [963] at pages 971–974 [1 L.Ed.2d 931 (1957) ]; and that the trial judge was led into error by the request of the petitioner for an instruction on the 'subsidiary conspiracy' theory, which error was compounded by the failure of the Government to object thereto."

   Yet, the *Forman* Court appears to have viewed the Government's failure to object as without legal significance. Perhaps the *Forman* Court implicitly recognized that erroneous jury instructions are still erroneous, even if neither party objects or requests additional instructions. Or, to put it another way, erroneous jury instructions are "trial error" as contemplated by *Burks* and *Greene*, although no one calls the error to the trial court's attention. Such a proposition is, to me at least, so basic as to require no further elaboration.

4. In a trial before the judge alone, there are, of course, no jury instructions against which to measure sufficiency of the evidence as in *Benson* and its progeny. This results in a double standard, depending on whether a judge or jury is the trier of facts. Nothing in *Burks* or *Greene* even suggests such a bizarre dichotomy.

5. In my view, the *Benson* approach to measuring sufficiency of the evidence against the trial court's charge is reminiscent of what the Supreme Court said in *Morris v. Slappy*, 461 U.S. 1 at 15, 103 S.Ct. 1610 at 1618, 75 L.Ed.2d 610 (1983):

   "Over 75 years ago, Roscoe Pound condemned American courts for ignoring 'substantive law and justice,' and treating trials as sporting contests in which the 'inquiry is, Have the rules of the game been carried out strictly?' Pound, The Causes of Popular Dissatisfaction With the Administration of Justice, 29 ABA Ann.Rep. 395, 406 (1906). A criminal trial is not a 'game,' ..."

6. In the brief filed by the State Prosecuting Attorney on original submission, *Morris v. Mathews*, supra, was discussed and quoted from in great detail. The Court's opinion relegates *Mathews* to footnote eight. Although from its discussion of that case the Court appears to have misread *Mathews*, it goes on to state: "Un-

acquittal by an appellate court after a finding of guilty by a jury significantly differs from an outright finding of not guilty by a jury.

When Stephens appealed his aggravated rape conviction there was a continuing, single jeopardy as to the greater offense and also to the necessarily implied conviction for the lesser included offense of rape as well. That single jeopardy terminated as to *aggravated* rape when this Court agreed with the Court of Appeals that the evidence was insufficient to support the aggravating factor and issued its mandate. However, because this Court found the evidence sufficient to support Stephens' conviction for the lesser included offense of rape,[7] the continuing, single jeopardy for that offense did not terminate with the reversal of his conviction for *aggravated* rape. Thus, a retrial of Stephens for the lesser included offense of rape does not offend double jeopardy principles. Therefore, since the reversal of Stephens' necessarily implied conviction for the lesser included offense was not based on insufficient evidence, the Court's present opinion which grants him immunity as to that offense makes little sense. On the contrary, so far as Stephens' necessarily implied conviction for the lesser included offense of rape is concerned, the following quotation from *United States v. Tateo,* 377 U.S. 463 at 466, 84 S.Ct. 1587 at 1589, 12 L.Ed.2d 448 (1964) is applicable:

> "It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction."

It is this quotation from *Tateo* that the United States Supreme Court found to be "the most reasonable justification" for allowing a retrial of a defendant after a successful appeal. *Burks v. United States,* 437 U.S. 1 at 15, 98 S.Ct. 2141 at 2149, 57 L.Ed.2d 1 (1978).

The majority opinion on original submission makes even less sense when one considers what would have occurred if Stephens' trial for aggravated rape had resulted in a hung jury rather than a verdict of guilty. Under the United States Supreme Court's decision in *Richardson v. United States,* 468 U.S. 317, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984), a hung jury at Stephens' trial for aggravated rape would permit a retrial for that offense even if the evidence had been legally insufficient at the first trial to sustain a conviction for the greater offense of aggravated rape or even the lesser included offense of rape. *Richardson* held that neither the failure of the jury to reach a verdict nor the trial court's declaration of a mistrial following a hung jury was an event that terminated the original jeopardy which attached when the jury was sworn, so that the defendant had no valid double jeopardy claim that a second trial was barred because of the failure of the prosecution to offer sufficient evidence to go to the jury, regardless of the sufficiency of the evidence at the first trial.

If a hung jury did not terminate original jeopardy in Richardson's case even if the evidence was legally insufficient to sustain a conviction, then how is it that the jury's necessarily implied verdict finding Stephens *guilty* of the lesser included offense of rape terminated original jeopardy in his case? And how did Stephens' original jeopardy terminate after our own Court found the evidence legally *sufficient* to sustain Stephens' conviction for rape. In my view

---

like the Ohio Supreme Court (sic), this Court does not have the authority to reform a conviction of a greater felony found to be based on insufficient evidence to a lesser felony, which the evidence will support." I am convinced that Texas law does permit such a reformation. See Tex.R.App.P. 80(b) and (c). Because the majority's statement to the contrary is unnecessary to the disposition of this case in its present posture, I consider the majority's statement dictum and pretermit further discussion of the issue.

7. In *Stephens II,* 717 S.W.2d 338 at 339 (Tex.Cr. App.1986), this Court stated: "By his own statement the jury could have found appellant guilty of rape." In *Stephens IV* the Court noted Stephens could have been convicted of the lesser included offense of rape if it had been submitted to the jury. (P. 814, n. 3). Again, the majority opinion in *Stephens IV* states: "The State is correct that the appellant was not impliedly acquitted of rape." (P. 818, n. 8).

the Court's opinion in the present case puts the proverbial cart before the horse. Moreover, it is illogical, on the one hand, to say that, after a *hung jury*, Stephens could have been retried for *aggravated* rape even though the evidence was *insufficient* to sustain a conviction for rape or aggravated rape and, on the other hand, to say that Stephens cannot be retried for rape after a jury had found him *guilty* of aggravated rape where this Court concedes that there was *sufficient* evidence to convict him of rape. Such a result turns *Richardson* on its head.

## II.

The majority erroneously asserts that "[t]he central issue in this case was reserved by the Supreme Court in *Greene v. Massey*, namely, whether appellate reversal of a conviction for a greater offense precludes retrial for a lesser offense." (P. 815) The majority cites, but does not quote, footnote seven of the *Greene v. Massey* opinion. That footnote reads:

"Arguably, the per curiam opinion might be read as meaning that although there was insufficient evidence to convict the defendants of 'murder in the first degree,' there was nonetheless evidence to support a conviction of a lesser included offense, e.g., second-degree murder, see Fla.Stat. Sec. 782.04 (1977). At the time of the Florida Supreme Court's holding in this case, the Double Jeopardy Clause was not applicable to state proceedings, and hence that court conceivably did not see any need to consider whether, under the Federal Constitution, a retrial would be allowed only for some lesser included offense. *Cf. Green v. United States*, 355 U.S. 184, 78 S.C. 221, 2 L.Ed.[2d] 199 (1957). Indeed, even if *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), had been decided prior to the State Supreme Court's action, the Florida court might have reasonably concluded from our decisions that a retrial for first-degree mur-

der was permissible under the Double Jeopardy Clause. See *Burks*, 395 U.S., at 10, 98 S.Ct., at 2147. Given our decision today to remand this case for reconsideration by the Court of Appeals, we need not reach the question of whether the State could, consistent with the Double Jeopardy Clause, try Greene for a lesser included offense in the event that his first-degree murder conviction is voided." (Emphasis added.)

The Court's citation of *Green v. United States* is significant, and I turn next to that decision. An examination of *Green* and subsequent decisions convinces me that the Supreme Court had already decided the issue prior to the decisions in *Burks* and *Greene.*

In *Green*, the defendant, tried for arson and first degree murder, was convicted by a jury for arson and the lesser included offense of second degree murder. Green appealed his second degree murder conviction, and the Court of Appeals reversed that conviction because it was not supported by evidence and remanded the case for a new trial.[8] 355 U.S. at 186, 78 S.Ct. at 223. On remand Green was tried again for first degree murder under the original indictment, convicted of that offense, and given a mandatory death sentence.

The Supreme Court held, however, that, when the jury at the first trial convicted Green of second degree murder, it implicitly acquitted him of first degree murder. Therefore, the Court held "that the second trial of Green for first degree murder was contrary to both the letter and spirit of the Fifth Amendment." 355 U.S. at 198, 78 S.Ct. at 229. But the Court did not preclude a third trial of Green for second degree murder.

In *Price v. Georgia*, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970), the defendant was tried for murder, but the jury convicted him of the lesser included offense of voluntary manslaughter. On appeal the guilty verdict was "set aside because of

---

**8.** Of course, *Burks* and *Green* would now pro-     hibit a new trial for even second degree murder.

trial error," i.e., the appellate court "reversed the conviction because of an erroneous jury instruction and ordered a new trial." 398 U.S. at 324, 90 S.Ct. at 1758.[9] Price was again placed on trial for murder under the original indictment. The trial court included instructions on the offense of murder to the second jury so that the jury could have rendered a verdict on that offense. The second jury, like the first, found Price guilty of voluntary manslaughter. Although Price relied on *Green v. United States*, supra, during his appeals in Georgia courts, those courts rejected his contentions and upheld his conviction, and the Supreme Court granted certiorari.

The Supreme Court reversed the voluntary manslaughter conviction, but in the course of its opinion made the following comments which are relevant to Stephens' case (footnotes omitted):

> "In *United States v. Ball*, 163 U.S. 662, 669, 16 S.Ct. 1192, 1194, 41 L.Ed. 300 (1896), this Court observed: 'The Constitution of the United States, in the Fifth Amendment, declares, "nor shall any person be subject [for the same offense] to be twice put in jeopardy of life or limb." The prohibition is not against being twice punished, but against being twice *put* in jeopardy * * *.' (Emphasis added.) The 'twice put in jeopardy' language of the Constitution thus relates to a potential, i.e., the risk that an accused for a second time will be convicted of the 'same offense' for which he was initially tried.
>
> "The circumstances that give rise to such a forbidden potential have been the subject of much discussion in this Court. In the *Ball* case for example, the Court expressly rejected the view that the double jeopardy provision prevented a second trial when a conviction had been set

aside. In so doing, it effectively formulated a concept of continuing jeopardy that has application where criminal proceedings against an accused have not run their full course. See *Green v. United States*, 355 U.S. 184, 189, 78 S.Ct. 221, 224, 2 L.Ed.2d 199 (1957).

> "*The continuing jeopardy principle necessarily is applicable to this case. Petitioner sought and obtained the reversal of his initial conviction for voluntary manslaughter by taking an appeal. Accordingly, no aspect of the bar on double jeopardy prevented his retrial for that crime. However the first verdict, limited as it was to the lesser included offense, required that the retrial be limited to that lesser offense.* Such a result flows inescapably from the Constitution's emphasis on a risk of conviction and the Constitution's explication in prior decisions of this Court.

\*    \*    \*    \*    \*    \*

> "The rationale of the *Green* holding applies here. *The concept of continuing jeopardy implicit in the Ball case would allow petitioner's retrial for voluntary manslaughter after his first conviction for that offense had been reversed.*" (Emphasis added). 398 U.S. at 326–329, 90 S.Ct. at 1759–1761.

The reason the Court gave for reversing the voluntary manslaughter conviction was, as follows (footnotes omitted):

> "One further consideration remains. Because the petitioner was convicted of the same crime at both the first and second trials, and because he suffered no greater punishment on the subsequent conviction, Georgia submits that the second jeopardy was harmless error when judged by the criteria of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17

---

9. At page 818 of its opinion the majority notes that the State had relied on *Price* for the proposition that Stephens remained in continuing jeopardy on the rape charge. The opinion then curtly dismisses the State's reliance as "misplaced," noting that "[t]he conviction in *Price* was originally reversed because of trial error."

It is true that Price's conviction was originally reversed for "trial error." However, the majority totally ignores the language the Supreme Court used in reversing Price's *second* conviction. It is that language which the State contended, and I agree, applies to Stephens' case.

L.Ed.2d 705 (1967), and *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

"We must reject this contention. The Double Jeopardy Clause, as we have noted, is couched in terms of the risk or hazard of trial and conviction, not of the ultimate legal consequences of the verdict. To be charged and to be subjected to a second trial for first-degree murder is an ordeal not to be viewed lightly. *Further, and perhaps of more importance, we cannot determine whether or not the murder charge against petitioner induced the jury to find him guilty of the less serious offense of voluntary manslaughter rather then to continue to debate his innocence.* See *United States ex rel. Hetenyi v. Wilkins*, 348 F.2d 844 (C.A.2d Cir.1965), cert. denied, *Mancusi v. Hetenyi*, 383 U.S. 913, 86 S.Ct. 896, 15 L.Ed.2d 667 (1966)." (Emphasis added).

But, the Court did not prohibit a *third* trial of Price for voluntary manslaughter under the Double Jeopardy Clause. Rather, the Court remanded the case to the Georgia courts, stating:

"We asked the parties to submit post-argument memoranda directed to the question of whether petitioner can now be re-indicted or retried for voluntary manslaughter under Georgia law. These memoranda have been filed and indicate that the answer to our question appears to depend upon the construction of several Georgia statues and on the power of Georgia courts to fashion remedial orders. Accordingly, although we reverse petitioner's conviction, we also remand the case to enable the Georgia courts to resolve the issues pertaining to petitioner's retrial, if any such retrial is to be had."

In the case of *Morris v. Mathews*, 475 U.S. 237, 106 S.Ct. 1032, 89 L.Ed.2d 187 (1986), the defendant, Mathews, pled guilty to Ohio charges of aggravated robbery at a bank. After the robbery Mathews' code-fendant, Daugherty, was found shot to death in a farmhouse to which the robbers had fled. Based on the coroner's initial ruling that Daugherty's death was suicide, Mathews was charged with aggravated robbery rather than homicide. After a forensic pathologist performed an autopsy, the coroner changed his ruling, listing multiple gunshot wounds as the cause of death. Then two days after the guilty plea to aggravated robbery, Mathews confessed to having shot Daugherty.

Subsequently, Mathews was indicted for aggravated murder. The murder was aggravated because Mathews "purposely cause[d] the death of [Daugherty] ... while fleeing immediately after committing ... aggravated robbery," the robbery being that to which Mathews had previously pled guilty. At the conclusion of the evidence on Mathews' trial for aggravated murder, the trial judge instructed the jury as to the elements of that offense; on the lesser included offense of murder, the jury was instructed:

"If you find that the State proved beyond a reasonable doubt all of the essential elements of aggravated murder, your verdict must be guilty of that crime and in that event you will not consider any lesser offense.

"But if you find that the State failed to prove the killing was done while the defendant was committing or fleeing immediately after committing aggravated robbery, but that the killing was nonetheless purposely done, you will proceed with your deliberations and decide whether the State has proved beyond a reasonable doubt the elements of the lesser crime or murder. The crime of murder is distinguished from aggravated murder by the State's failure to prove that the killing was done while the defendant was committing or fleeing immediately after committing the crime of aggravated robbery."

The jury found Mathews guilty of aggravated murder.

To understand subsequent events, the procedural posture, and the Supreme

Court's ultimate handling of the case it is best to quote from Justice White's opinion for the Court in *Mathews* at length (footnotes omitted):

"Respondent appealed his conviction, claiming that his trial for aggravated murder following his conviction for aggravated robbery violated the Double Jeopardy Clause. The Ohio Court of Appeals, Fifth Judicial District, affirmed his conviction, *State v. Mathews*, CA No. 2578 (Licking County Ct.App., Aug. 9, 1979), and the Ohio Supreme Court declined to grant discretionary review. *State v. Mathews*, No. 79-1342 (Ohio Sup.Ct., Dec. 7, 1979). This Court granted respondent's petition for writ of certiorari, and remanded the case for further consideration in light of *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980). *Mathews v. Ohio*, 448 U.S. 904, 100 S.Ct. 3044, 65 L.Ed.2d 1134 (1980).

"On remand, the Court of Appeals found that the Double Jeopardy Clause, as construed by this Court in Vitale, barred respondent's conviction for aggravated murder. *State v. Mathews*, No. 2578 (Licking County Ct.App., Nov. 7, 1980). The court noted, however, that Sec. 2903.01 defines aggravated murder as purposely causing the death of another while committing certain felonies, and that Sec. 2903.02 defines murder simply as purposely causing the death of another. App. to Pet. for Cert. A-26. In respondent's trial therefore, 'if all the facts relating to the aggravated robbery of which he was convicted are excluded from consideration of the court and jury, the defendant was still charged with and convicted of murder in that he did purposely cause the death of Steven Daugherty on the date charged.' Ibid. Accordingly, *the Court of Appeals modified the conviction of aggravated murder to murder and reduced respondent's sentence to an indefinite term of from 15 years to life*. Id., at A-27. Once again, the Ohio Supreme Court denied respondent's motion to appeal, and this Court

denied his subsequent petition for certiorari review. *Mathews v. Ohio*, 451 U.S. 975, 101 S.Ct. 1057 [2057], 68 L.Ed.2d 356 (1981).

"Respondent then sought a writ of habeas corpus in federal court. Applying the reasoning of the Ohio Court of Appeals, the District Court denied respondent's petition. *Mathews v. Marshall*, No. C-1-81-834 (WD Ohio, Apr. 19, 1983).

"A divided panel of the Court of Appeals for the Sixth Circuit reversed. *Mathews v. Marshall*, 754 F.2d 158 (1985). Although refusing to hold that in a case like this a new trial on the nonbarred charge is always necessary, the court held that 'a conviction obtained in violation of the double jeopardy clause cannot be modified if the defendant can show that there was a "reasonable possibility that he was prejudiced" by the double jeopardy violation,' and that ' "an exceedingly small showing ... would suffice." ' Id., at 162, quoting *Graham v. Smith*, 602 F.2d 1078, 1083 (CA2 1979). Apparently agreeing with respondent's assertion that 'evidence was admitted in his trial for aggravated murder that would not have been admissible in a trial for murder,' and stating that the jury 'may have [been] prejudiced' by that evidence, the court concluded that respondent had established a sufficient possibility of prejudice to warrant a new trial on the murder charge. *Mathews v. Marshall*, supra, at 162."

\*     \*     \*     \*     \*     \*

*"As an initial matter, we note several issues that are not in dispute. First, the State concedes that under our cases the prosecution of respondent for aggravated murder violated the Double Jeopardy Clause. Similarly, respondent concedes that the Clause would not prevent the State from trying him for murder. Next, all of the courts that have reviewed this case have agreed that, in finding respondent guilty of aggravated murder, the jury*

*necessarily found that he 'purposely cause[d] the death of another,' which is the definition of murder under Ohio Rev.Code Ann. Sec. 2903.02 (1982).* See n. 4, supra. Finally, this is not a 'harmless error' case: allowing respondent to be tried for aggravated murder was error, and it was not in any sense harmless. With these considerations aside, *the only issues before us is whether reducing respondent's conviction for aggravated murder to a conviction for murder is an adequate remedy for the double jeopardy violation.*

"Respondent argues that, because the trial for aggravated murder should never have occurred, the Double Jeopardy Clause bars the State from taking advantage of the jeopardy-barred conviction by converting it into a conviction for the lesser crime of murder. He submits that a new trial must be granted whether or not there is a showing of prejudice.

"Respondent relies heavily on *Price v. Georgia,* 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970), but his reliance is misplaced. Price was tried for murder and convicted of the lesser-included offense of manslaughter. After that conviction was reversed on appeal, there was another trial for murder and another conviction of the lesser crime of manslaughter. We held that the second conviction could not stand because Price had been impliedly acquitted of murder at the first trial and could not be tried again on that charge. *Id.,* at 329, 90 S.Ct., at 1761. Nor could we 'determine whether or not the murder charge against petitioner induced the jury to find him guilty of the less serious offense of voluntary manslaughter rather than to continue to debate his innocence.' *Id.,* at 332, 90 S.Ct., at 1762.

"This holding in Price did not impose an automatic retrial rule whenever a defendant is tried for a jeopardy-barred crime and is convicted of a lesser-included offense. Rather, the Court relied on the likelihood that the conviction for manslaughter had been influenced by the trial on the murder charge—that the charge of the greater offense for which the jury was unwilling to convict also made the jury less willing to consider the defendant's innocence on the lesser charge. That basis for finding or presuming prejudice is not present here. *The jury did not acquit Mathews of the greater offense of aggravated murder, but found him guilty of that charge and, a fortiori, of the lesser offense of murder as well.*

"*Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), also strongly indicates that to prevail here, Mathews must show that trying him on the jeopardy-barred charge tainted his conviction for the lesser-included offense. Benton was tried for both larceny and burglary. The jury acquitted him on the larceny count, but found him guilty of burglary. His conviction was later set aside because the jury had been improperly sworn. Benton again was tried for both burglary and larceny, and the second jury found him guilty of both offenses. The Maryland Court of Appeals held there had been no double jeopardy violation, but we disagreed, ruling that the Double Jeopardy Clause required setting aside the larceny conviction and sentence. *Id.,* at 796–797, 89 S.Ct. at 2063–2064.

"Benton urged that his burglary conviction must also fall because certain evidence admitted at his second trial would not have been admitted had he been tried for burglary alone. This evidence, he claimed, prejudiced the jury and influenced their decision to convict him of burglary. We rejected that argument, saying both that '[i]t [was] not obvious on the face of the record that the burglary conviction was affected by the double jeopardy violation,' and that we should not make this kind of evidentiary determination 'unaided by prior consideration by the state courts.' *Id.,* at 798, 89 S.Ct., at 2064 (footnote omitted). We thus vacated the judgment of the Maryland

court, and remanded for further proceedings.

"Neither Benton nor Price suggest that a conviction for an unbarred offense is inherently tainted if tried with a jeopardy-barred charge. Instead, both cases suggest that a new trial is required only when the defendant shows a reliable inference of prejudice. We perceive no basis for departing from this approach here; for except that murder was a lesser offense included in the aggravated murder charge rather than a separate charge, there is no difference between this case and Benton for double jeopardy purposes.

"*Accordingly, we hold that when a jeopardy-barred conviction is reduced to a conviction for a lesser included offense which is not jeopardy barred, the burden shifts to the defendant to demonstrate a reasonable probability that he would not have been convicted of the non-jeopardy-barred offense. In this situation, we believe that a 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.* Cf. *Strickland v. Washington,* 466 U.S. 668, 695, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). After all, one of the purposes of the Double Jeopardy Clause is to prevent multiple prosecutions and to protect an individual from suffering the embarrassment, anxiety, and expense of another trial for the same offense, *Green v. United States,* 355 U.S. 184, 187–188, 78 S.Ct. 221, 223–224, 2 L.Ed.2d 199 (1957). *In cases like this, therefore, where it is clear that the jury necessarily found that the defendant's conduct satisfies the elements of the lesser included offense, it would be incongruous always to order yet another trial as a means of curing a violation of the Double Jeopardy Clause.*

"The Court of Appeals thus was correct in rejecting respondent's per se submission, but it was nevertheless too ready to find that Mathews had made the necessary showing of prejudice. First,

the court's 'reasonable possibility' standard, which could be satisfied by 'an exceedingly small showing,' was not sufficiently demanding. *To prevail in a case like this, the defendant must show that, but for the improper inclusion of the jeopardy-barred charge, the result of the proceeding probably would have been different.*"

106 S.Ct. at 1036–38

Mathews was tried for a jeopardy-barred offense, i.e., aggravated murder, and was convicted of that offense. The reason such a trial and conviction was jeopardy-barred was because Mathews already had an unvacated, prior conviction for aggravated robbery, which was an element of the greater offense of aggravated murder. But, the Court held that, since Mathews had neither been previously convicted nor acquitted of murder, a trial and conviction for that lesser included offense, i.e., murder, was not jeopardy-barred. It is for this reason that it was constitutionally permissible for the Ohio appellate court to reform the jeopardy-barred aggravated murder conviction to one for lesser included offense of murder.

Although admittedly *Mathews* involved only one proceeding, there is nothing in the Supreme Court's opinion to suggest that a retrial of the defendant in that case for the lesser included offense of murder would be prohibited by double jeopardy principles. In fact, the contrary is true, for the Court made plain that *retrial* was *one* method of curing the double jeopardy violation:

"*In cases like this, therefore, where it is clear that the jury necessarily found that the defendant's conduct satisfies the elements of the lesser included offense, it would be incongruous always to order yet another trial as a means of curing a violation of the Double Jeopardy Clause.*" (Emphasis added.)

Another method was to reform the judgment to reflect a conviction for the lesser included offense only, as was done in *Morris v. Mathews* itself. But, read together, *Green, Price,* and *Morris v. Mathews* make

plain that, where retrial for a greater offense is barred by double principles, retrial for a lesser included offense is not.

### III.

Until recent months this Court had held that *Burks* and *Greene* do not prohibit retrial of a lesser included offense after an appellate court had found the evidence insufficient to sustain a conviction for a greater offense. In *Moss v. State*, 574 S.W.2d 542 at 545 (Tex.Cr.App.1978) (Opinion on Rehearing), this Court observed:

"We agree with the dissent that the Supreme Court opinions of *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978) and *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) prevent the retrial of the appellant for the offense of burglary of a residence. However, there is nothing in these opinions which would prevent retrial for the offense of burglary of a building. We hold that the appellant may be retried for the offense of burglary of a building."

Among the cases which have cited and follow *Moss* are: *Rogers v. State*, 575 S.W.2d 555 at 559 (Tex.Cr.App.1979) (aggravated rape); *Ex parte Harris*, 600 S.W.2d 791 at 792–793 (Tex.Cr.App.1980) (aggravated robbery); *Cruz v. State*, 629 S.W.2d 852 at 860 (Tex.App.–Corpus Christi 1982, pet. ref'd) (capital murder); *Black v. State*, 637 S.W.2d 923 at 926 (Tex.Cr.App. 1982); *Seidel v. State*, 654 S.W.2d 39 at 40 (Tex.App.–Dallas 1983, pet. ref'd) (concurring opinion) (theft over $200); *Welch v. State*, 683 S.W.2d 54 (Tex.App.–Houston [1st Dist.] 1984) (possession of methamphetamine with intent to deliver); *Keith v. State*, 692 S.W.2d 921 at 923 (Tex.App.–Houston [14th Dist.] 1985) (involuntary manslaughter); *Chandler v. State*, 743 S.W.2d 736 at 744–745 (Tex.App.–Corpus Christi 1987) (burglary of a habitation); *State v. Engelking*, 771 S.W.2d 213 (Tex. App.–Houston [1st Dist.] 1989, pet. granted) (possession of at least 400 grams of methamphetamine). See also *Granger v.*

*State*, 605 S.W.2d 602 (Tex.Cr.App.1980); *Taylor v. State*, 637 S.W.2d 929 (Tex.Cr. App.1982); *Scott v. State*, 712 S.W.2d 782 (Tex.App.–Houston [1st Dist.] 1986); and compare *Teague v. State*, 628 S.W.2d 240 (Tex.App.–Fort Worth 1982); *Ramon v. State*, 657 S.W.2d 437 (Tex.App.–Corpus Christi 1983) (acquittal ordered because evidence insufficient to sustain a conviction for both greater and lesser included offenses); *Flanagan v. State*, 675 S.W.2d 734 (Tex.Cr.App.1984); and *Ex parte Keith*, 761 S.W.2d 442 (Tex.App.–Houston [14th Dist.] 1988), pet. granted.).

*Moss* was decided on rehearing on November 15, 1978. From that date and for a period of over seven and one-half years thereafter the law in Texas was that a retrial on a lesser included offense was not necessarily barred by an appellate acquittal of the greater offense on the ground that the evidence was insufficient to sustain a conviction for the greater offense. Retrial for a lesser included offense was prohibited *only* where the appellate court found the evidence insufficient to sustain a conviction for *both* the greater and a lesser included offense. *Ramon v. State*, supra.

On June 11, 1986, however, the Court did an about face and decided a trilogy of cases on original submission, which purported to change well-settled Texas law. Curiously, neither decision referred to the other. These decisions were *Garrett v. State*, 749 S.W.2d 784–801 (Tex.Cr.App.1986); *Ibanez v. State*, 749 S.W.2d 804–812 (Tex.Cr.App. 1986); and *Stephens v. State*, 717 S.W.2d 338 (Tex.Cr.App.1986).

In *Garrett* the defendant was convicted of the murder of Betty Lynn Bennett. Garrett wanted to shoot Bill Rankin. She fired her rifle but hit and killed Bennett instead of Rankin. On appeal to the intermediate court and review to this Court, Garrett contended that the evidence was insufficient to sustain a conviction for murder. Although the evidence was sufficient to sustain the conviction under the doctrine of transferred intent, see V.T.C.A., Penal

Code Section 6.04(b)(2) [10], this Court refused to apply that doctrine. Citing *Benson v. State*, supra, this Court reviewed the sufficiency of the evidence by comparing the evidence admitted at trial "to the indictment as incorporated into the charge." The Court conceded that the jury was charged on the doctrine of transferred intent, but held that, since the law of transferred intent was only abstractly stated and was not "applied to the facts that were developed at trial," the State could not rely on that doctrine. Thus, without the doctrine of transferred intent the evidence was insufficient to sustain a conviction for murder. See Part I, supra.

The Court did not stop there, however. It went on to hold that, "following appellate reversal of a conviction on the basis of insufficient evidence to support the verdict, the Double Jeopardy Clause bars represecution for any lesser offense which is the 'same' as the greater, acquitted offense under the test in *Blockburger [v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) ]." (Op. 21). In so doing, it overruled *Moss v. State*, 574 S.W.2d 542 (Tex.Cr.App.1978), and its progeny which had held the contrary. See 749 S.W.2d at 794, n. 13, and accompanying text.

On April 20, 1988, the Court issued its opinion on State's motion for rehearing in *Garrett*. In so doing, the Court held that any discussion of whether the defendant could be represecuted if he were subsequently charged "with some lesser included offense" was "advisory." See 749 S.W.2d at 804. Therefore, the Court "express[ed] no opinion at this time as to whether appellant could be tried for some lesser included offense." *Ibid.* Nevertheless, the opinion on original submission in *Garrett* had set the stage for *Stephens IV*.

In *Ibanez* the defendant was convicted of capital murder. What elevated the offense from non-capital murder, V.T.C.A., Penal Code Section 19.02, to capital murder, V.T.C.A., Penal Code Section 19.03, was the allegation of the additional element that the murder was committed in the course of committing robbery. With four judges dissenting, a bare majority of the Court held the evidence was insufficient to prove the additional elevating element, i.e., that the murder was committed in the course of robbery. It therefore acquitted Ibanez of the crime of *capital* murder. However, all members of the Court appear to have agreed that the evidence was sufficient to sustain a conviction for non-capital murder.

On May 11, 1988, the Court overruled the State's motion for rehearing in *Ibanez* again with four judges dissenting. See 749 S.W.2d 804, 812–813. Neither the opinion on original submission nor the dissenting opinion on the denial of the State's motion for rehearing addressed the issue of whether the defendant could be retried for the lesser included offense of murder.

In *Stephens II* the defendant was convicted of aggravated rape. With three judges dissenting, a majority of the Court held that, although some of Stephens' codefendants and Stephens himself may have been guilty of aggravated rape, the evidence was insufficient to prove the aggravating element of the rape as to Stephens when the "indictment as incorporated into the charge" rule of *Benson v. State*, supra, was applied. See Judge Teague's dissent which, although not mentioning *Garrett*, came to basically the same conclusion as the *Garrett* majority on original submission on the issue of whether Stephens could be represecuted for the lesser included offense of rape.

**10.** Section 6.04(b)(2) provides:

"A person is nevertheless criminally responsible for causing a result if the only difference be-

tween what actually occurred and what he desired, contemplated, or risked is that:

· · · · ·

"(2) a different person or property was injured, harmed, or otherwise affected."

On May 26, 1988, the Court of Appeals rendered its decision in *Stephens III*, and on May 2, 1990, a majority of this Court, on original submission, affirmed the Court of Appeals' decision in the present case (*Stephens IV*). Consequently, the majority opinion on original submission in *Garrett* was reborn.

If the majority opinion on original submission in *Stephens IV* is allowed to stand, will the State be able to reprosecute Ibanez for *non-capital* murder? The *Garrett* majority on original submission had stated:

"Even if the evidentiary deficiency in the proof of the greater offense lies *merely* in a failure to prove the additional 'facts required to establish the commission of the [greater] offense,' or the greater culpable mental state, or the proof establishes only an attempt at commission of the greater offense, or a less serious injury or risk of injury than that required of the greater offense, Article 37.09, V.A.C.C.P., in nevertheless having *proceeded* on the greater offense, as well as any properly authorized lesser included offenses, the State has risked the possibility of obtaining a verdict on the greater offense, which proves, on appellate review, to be unsupported in the evidence. Having thus overreached, as it were, the State cannot be heard to complain that it has not had its one bite at the apple. No consideration of 'fairness to society' can justify the additional 'embarrassment, expense and ordeal' to an accused under these circumstances." 749 S.W.2d at 794.

It is ironic that the trial prosecutor, "[h]aving thus overreached," found 12 jurors and four members of this Court to agree with him in *Ibanez*. It is, therefore, unfair to accuse the prosecutor in *Ibanez* or any other case of having "overreached" where conviction is sought on a greater offense in good faith. It is even less fair to accuse a prosecutor of "overreaching" where he has sufficient evidence to obtain a conviction but for some reason fails to request a jury instruction which would permit conviction

for the greater offense. Indeed, if an accusation of "overreaching" is appropriate, then I suggest that the majority has "overreached" the State and its citizens with such decisions as *Benson* and *Stephens IV*. These decisions, if permitted to stand, will give Ibanez one free murder under his belt.

Can the defendant in *Garrett* be retried for a lesser included offense? The *Stephens IV* majority says "no." Likewise, *Stephens IV* says that Stephens himself cannot be retried for a lesser included offense. This is nonsense.

In my view there is absolutely no valid reason for this Court to overrule *Moss* and its progeny. The majority opinion in *Stephens IV* cannot be squared with *Richardson*, see Part II, supra, with *Green, Price,* and *Mathews*, see Part III, supra, nor with decisions from other jurisdictions, see Part IV, infra.

### IV.

In New York, the highest court of that state has held that, where the evidence is insufficient to support a conviction for a greater offense, an indictment or count of an indictment charging the greater offense must be dismissed. *People v. Mayo*, 48 N.Y.2d 245, 422 N.Y.S.2d 361, 397 N.E.2d 1166 (1979). However, the prosecution is permitted to seek a new indictment charging the lesser offense. *People v. Mayo*, supra; *People v. Gonzalez*, 61 N.Y.2d 633, 471 N.Y.S.2d 847, 459 N.E.2d 1285 (1983).

In California, the State Supreme Court has held that a jury's effective acquittal for murder did not bar a retrial of the defendant for a lesser included offense where a jury at the first trial deadlocked and was unable to agree on a verdict as to the lesser included offense. *Stone v. Superior Court of San Diego County*, 31 Cal.3d 503, 183 Cal.Rptr. 647, 646 P.2d 809 (1982).

In *Ex parte Beverly*, 497 So.2d 519 (Ala. 1986), the Alabama Supreme Court held that an appellate acquittal of a greater offense on the ground of insufficient evidence did not prohibit a retrial of a lesser

included offense where the evidence at the first trial was sufficient to sustain a conviction for the lesser offense.

In *Beverly v. Jones*, 854 F.2d 412 (11th Cir.1988), the Eleventh Circuit had before it on federal habeas corpus the same events that are found in *Ex parte Beverly*, supra. The Eleventh Circuit concluded that the greater and lesser included offense there involved were the "same" for double jeopardy purposes.[11] The Court went on to state, however:

"B.

"Having concluded that the offenses for which Beverly was convicted are the same insofar as the Double Jeopardy Clause is concerned, we consider next the contention that he was wrongfully prosecuted for murder following the Court of Criminal Appeals' acquittal on the greater offense of robbery when the victim is intentionally killed. Relying primarily on *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), Beverly argues that the appellate reversal of the 1981 conviction based on evidentiary insufficiency is the operative equivalent of a judgment of acquittal on the offense, and all of the lesser offenses included therein, including murder.

"In *Burks*, the Supreme Court held that the Double Jeopardy Clause precludes a second trial for an alleged offense once a reviewing court has determined that the evidence introduced at trial was insufficient to sustain the verdict. *Id.*, at 18, 98 S.Ct. at 2150. The Court, in a companion case, applied the *Burks* rule to a state criminal proceeding. *Greene v. Massey*, 437 U.S. 19, 24, 98 S.Ct. 2151, 2154, 57 L.Ed.2d 15 (1978). Through these cases, the Court carved out a *narrow exception* to the rule announced long ago in *United States v. Ball*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896), that a criminal defen-

dant who successfully appeals a judgment against him 'may be tried anew ... for the same offense of which he had been convicted.' *Id.*, at 672, 16 S.Ct. at 1195. Two closely related policies underlie the exception: (1) a reversal based on insufficiency of the evidence has the same effect as a judgment of acquittal, to which the Double Jeopardy Clause attaches special significance, because both mean that no rational finder of fact could have voted to convict the defendant on the evidence presented; and (2) the prosecution should not be afforded another opportunity to supply evidence it failed to muster in the previous trial. *Tibbs v. Florida*, 457 U.S. 31, 41–42, 102 S.Ct. 2211, 2217–18, 72 L.Ed.2d 652 (1982). Neither of these policies are implicated in this case.

"The Court of Criminal Appeals' reversal of Beverly's second conviction for robbery when the victim is intentionally killed did not constitute a decision that the State failed to prove beyond a reasonable doubt the lesser included offense. See *Ex parte Beverly*, 497 So.2d at 523. In fact, the court explicitly limited its finding of insufficient evidence to common law robbery when it stated that '[t]he deficiency in this particular case is not a mere insufficiency of the evidence but rather the total lack of proof of all the essential elements of common law robbery as charged in the indictment.' [*Beverly v. State*] *Beverly II*, 439 So.2d [758] at 762 [Ala.Cr.App.1983]. The jury was instructed on the lesser included offense of murder, and common sense dictates that they necessarily found Beverly guilty of that offense by returning a guilty verdict on the greater offense. See *Brown v. Ohio*, 432 U.S. [161] at 167–68, 97 S.Ct. [2221] at 2226–27 [53 L.Ed.2d 187 (1977)]. *Since no state appellate court has declared that the evidence that Beverly murdered Scott Deroo was insufficient to support the*

11. In the majority opinion in the present case (*Stephens IV*, p. 815), the Court concluded that the offenses of rape and aggravated rape are the "same" for double jeopardy purpose. I have no quarrel with that conclusion.

*jury's verdict, Beverly's claim that he has been acquitted of murder is meritless.*

"Moreover, this is not a case in which the State was presented with multiple opportunities to convict and punish an individual for a single offense; rather, quite the opposite is true. At his request, Beverly was given another chance to rebut the State's evidence that he committed the murder even though the State had already obtained a conviction for that offense.

"Furthermore, Beverly was not subjected to the threat of any greater punishment than he would have received had the Alabama Court of Criminal Appeals rendered judgment on the lesser included offense of murder and remanded the case to the trial court for sentencing, a procedure approved by this court's predecessor and the courts of Alabama despite double jeopardy objections. See e.g., *Theriault v. United States*, 434 F.2d 212 (5th Cir.1970); *Ex parte Edwards*, 452 So.2d 508 (Ala.1984). *It is difficult to imagine, therefore, how Beverly's second chance at acquittal could be constitutionally infirm when a remand for sentencing would not have been.*

"C.

"We conclude that the Constitution's prohibition against double jeopardy did not preclude the State from retrying Beverly on the lesser included offense once the Court of Criminal Appeals reversed his conviction on the greater offense. To hold otherwise would impose too high a price on society. See *United States v. Tateo*, 377 U.S. 463, 466, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964)." (Emphasis added; footnotes omitted.)

As *Mathews* illustrates a verdict finding Stephens guilty of aggravated rape necessarily implies that the jury also found him guilty of the lesser included offense of rape. The majority in the present case (*Stephens IV*), however, treats an implied finding of guilt of a lesser included offense

different from an express finding of guilt for a lesser included offense. This treatment is wholly unwarranted. There is no significant legal difference, constitutional or otherwise.

The majority takes *Burks* and *Greene's* "narrow exception," *Beverly v. Jones*, supra, and allows it to swallow the general rule permitting retrial. It punishes the State and its citizens not because the prosecutor offered insufficient evidence at trial to convict for the lesser included offense but because there was insufficient evidence of the greater offense when measured against the trial court's jury instructions. It seems to me that, if any "punishment" is due the prosecution, then prohibiting retrial on the greater offense is enough. Moreover, while the majority views a retrial for the lesser included offense of rape as giving the prosecutor a "second bite" at the "conviction apple," it fails to realize that such retrial will also give Stephens a "second bite" to establish his innocence. *Beverly v. Jones*, supra.

In my view this Court's decisions in *Moss* and its progeny are correct and should not be overruled. *Moss* is consistent with the Supreme Court's decisions in *Green, Price*, and *Mathews*. It is also consistent with the view taken by the New York Court of Appeals, the Supreme Courts of California and Alabama, and the United States Court of Appeals for the Eleventh Circuit. The majority opinion in the present case (*Stephens IV*) on original submission is in clear conflict with this Court's own prior decisions, those of the Supreme Court of the United States and the Eleventh Circuit, and those of the highest courts of New York, California, and Alabama.

V.

Under principles of double jeopardy, a verdict finding the defendant guilty of a lesser included offense is treated as an implied acquittal of the greater offense where such a verdict is accepted by the

trial court and both the greater offense and the lesser included had been submitted to the trier of fact during the trial. The other side of the coin is that, where the trier of fact convicts for the greater offense, and that verdict is accepted by the trial court, it is necessarily implicit in that verdict that the trier of fact *also* convicted of the predicate or lesser included offense, regardless of whether the predicate or lesser included offense was *separately* submitted to the trier of fact as an alternative basis for conviction. See *Morris v. Mathews*, supra. Any other conclusion defies logic and common sense.

Stephens' case is an excellent example of the other side of the double jeopardy coin. Before the jury could convict him of aggravated rape under V.T.C.A., Penal Code Section 21.03 (now repealed), it necessarily had to find as a predicate for such a conviction that Stephens had committed rape as denounced by V.T.C.A., Penal Code Section 21.02 (now repealed).

No trier of fact has ever found Stephens "not guilty" of the predicate or lesser included offense of rape under Section 21.02. *and, no* court—trial or appellate—has found the evidence insufficient to sustain a conviction for the predicate or lesser included offense of rape under Section 21.02. All that has been said was that the evidence was insufficient to show that Stephens' rape was *aggravated.* This is a far cry from saying that the evidence was insufficient to convict him of *rape!*

Under the *Ball* doctrine of continuing jeopardy, quoted in *Price,* supra, after a defendant has successfully appealed his conviction, and under the authority of cases such as *Richardson, Green, Price,* and *Mathews,* I believe that the majority on original submission in *Stephens IV* is wrong. On the contrary, I believe that the inescapable conclusion is that nothing in the Double Jeopardy Clause prohibits Stephens' retrial for the lesser included offense of rape under Section 21.02. Rather, a retrial for rape under Section 21.02 is specifically permitted under the authorities heretofore cited.

Finally, to hold that Stephens cannot now be tried for the lesser included offense of rape is contrary to Justice Harlan's now famous observation for the Court in *United States v. Tateo,* 377 U.S. 463, 466, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964):

"While different theories have been advanced to support the permissibility of retrial, of greater importance than the conceptual abstractions employed to explain the Ball principle are the implications of that principle for the sound administration of justice. Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. From the standpoint of a defendant, it is at least doubtful that appellate courts would be as zealous as they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution. In reality, therefore, the practice of retrial serves defendants' rights as well as society's interest. The underlying purpose of permitting retrial is as much furthered by application of the rule to this case as it has been in cases previously decided."

As I have previously stated, Harlan's view has now been adopted by the Court as "the most reasonable justification" in support of the *Ball* policy of permitting retrial in a situation such as the present one. *Burks v. United States,* 437 U.S. 1, 15, 98 S.Ct. 2141, 2149, 57 L.Ed.2d 1 (1978).

It is for these reasons that I respectfully dissent to granting Stephens habeas corpus relief. A retrial of Stephens for the lesser included offense of rape is not barred by either the policies or principles of double jeopardy law.