

# NUMBER 13-11-00447-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

OTIS RAY DAWSON,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                  Appellee.

### On appeal from the 54th District Court
### of McLennan County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Vela and Perkes
### Memorandum Opinion by Justice Rose Vela

The trial court found appellant, Otis Ray Dawson, guilty of aggravated robbery, a first-degree felony, see TEX. PENAL CODE ANN. § 29.03(a)(3)(A), (b) (West 2003), and sentenced him as a repeat-felony offender to sixty years' imprisonment. By two issues, appellant challenges the legal sufficiency of the evidence to show he intentionally or knowingly threatened or placed the victim in fear of imminent bodily injury or death, and

he argues the trial court erred by resentencing him to sixty-years' imprisonment after having previously sentencing him to forty years' imprisonment. We affirm.[1]

## I. FACTUAL BACKGROUND

On June 21, 2010, Durwood Swindell was working behind the counter at a convenience store in Waco, Texas. That afternoon, appellant came into the store to buy some cigarettes and sunglasses. Appellant picked up the merchandise in his right hand, but kept his left hand in his pocket. He pulled out a pistol and asked Swindell, "'Do you see this?'" When Swindell said, "'Yes,'" appellant told him, "'Don't push any buttons,'" and left the store.

When the prosecutor asked Swindell, "Did you feel threatened?," he said, "Yes, when I saw the revolver." When the prosecutor asked him, "Were you--did it place you in fear of imminent bodily injury or death?," he said, "Well, yes. If anybody's gonna show you a gun, whether they—you know, he showed it or whether he pulled it out, I was threatened. . . . Because I was afraid he was gonna shoot me." Swindell also stated appellant "took off running towards the trees when he saw me come out and he turned around. And I followed up to the trees. I didn't want to go any further because I was afraid I'd be shot." Swindell testified he did not give appellant permission to take the cigarettes or the sunglasses.

On cross-examination, Swindell testified he "did not see the whole weapon. I only saw a portion of it." He said appellant "had his hand on the handle [of the gun]. He pulled it up." Swindell stated the weapon looked like a Glock. When defense counsel

---

[1] This appeal was transferred to this Court from the Tenth Court of Appeals pursuant to a docket-equalization order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

asked him, "[A]fter this firearm or whatever was displayed, did you not say to the person, 'Is that supposed to scare me?,'" he said, "Yes, I did say that." When asked, "So you weren't scared, though?," he said, "Yeah, I was" and that "I know I was acting like a macho. You know how men are. We act like we're machos. . . . I did my best to maintain my cool." When defense counsel asked him, "[A]t the time, based on your actions, you didn't think you were gonna get shot, didn't you?," he said, "There was that possibility, yes." When asked, "But you didn't think you were gonna get shot?," he said, "No, not at that time, but I thought I was if I didn't follow his instructions." When defense counsel asked him, "Was there a time when you told one of the police officers or one of the police detectives that you did not see the gun?," he said, "There is a possibility that I might have said that. Yes. Because I had a lot of things going through my mind at that time."

Appellant did not testify at the guilt-innocence phase of his trial. The defense rested its case without calling any witnesses.

## II. DISCUSSION

### A. Sufficiency of the Evidence

We address issue two first wherein appellant contends the evidence is legally insufficient to establish he intentionally or knowingly threatened or placed the victim in fear of imminent bodily injury or death, as required by section 29.03(a)(3)(A) of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 29.03(a)(3)(A).

#### 1. Standard of Review

"When reviewing a case for legal sufficiency, we view all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have

3

found the essential elements of the crime beyond a reasonable doubt." *Winfrey v. State*, 323 S.W.3d 875, 878–79 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "Consequently, we 'determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.'" *Id.* at 879 (quoting *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (citing *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)). "It has been said, quite appropriately, that '[t]he appellate scales are supposed to be weighted in favor of upholding a trial court's judgment of conviction, and this weighting includes, for example, the highly deferential standard of review for legal-sufficiency claims.'" *Id.* (quoting *Haynes v. State*, 273 S.W.3d 183, 195 (Tex. Crim. App. 2008) (Keller J., dissenting) (citing *Jackson*, 443 U.S. at 319)). "We must therefore determine whether the evidence presented to the jury, viewed in the light most favorable to the verdict, proves beyond a reasonable doubt that appellant" committed the crime for which the jury found him guilty. *See id.* "It is the obligation and responsibility of appellate courts 'to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime that was charged.'" *Id.* at 882 (quoting *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)). "Furthermore, '[i]f the evidence at trial raises only a suspicion of guilt, even a strong one, then that evidence is insufficient [to convict].'" *Id.* (quoting *Urbano v. State*, 837 S.W.2d 114, 116 (Tex. Crim. App. 1992), *superseded in part on other grounds*, *Herrin v. State*, 125 S.W.3d 436, 443 (Tex. Crim. App. 2002)).

4

Section 29.03 of the penal code defines aggravated robbery as follows:

(a) A person commits an offense if he commits robbery as defined in Section 29.02, and he:

> (1) causes serious bodily injury to another;
>
> (2) uses or exhibits a deadly weapon; or
>
> (3) causes bodily injury to another person or threatens or places another person in fear of imminent bodily injury or death, if the other person is:

(A) 65 years of age or older; or

(B) a disabled person.

TEX. PENAL CODE ANN. § 29.03(a).

Section 29.02 defines robbery in the following language:

(a) A person commits an offense if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he:

> (1) intentionally, knowingly, or recklessly causes bodily injury to another; or
>
> (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

*Id.* § 29.02(a) (West 2003).

## 2. Analysis

The indictment recites, in relevant part, that appellant "while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally or knowingly threaten or place DURWOOD SWINDELL, a person 65 years of age or older, in fear of imminent bodily injury or death. . . ." Swindell testified appellant had a pistol and that he "pulled it up" with "his hand on the handle." When the prosecutor

asked Swindell, "Did you feel threatened?", he said, "Yes, when I saw the revolver." When the prosecutor asked him, "Were you--did it place you in fear of imminent bodily injury or death?", he said, "Well, yes. If anybody's gonna show you a gun, whether they—you know, he showed it or whether he pulled it out, I was threatened. . . . Because I was afraid he was gonna shoot me." In addition, Swindell testified he was born on June 19, 1944. Because this crime occurred on June 21, 2010, he was sixty-five years of age or older at the time of the offense.

Appellant argues that because "no firearm can really be seen by viewing the in-store video of the incident"[2] and because Swindell testified that when he saw the gun he asked appellant, "Is that supposed to scare me?," he could not have placed Swindell in fear of imminent bodily injury or death. However, Swindell testified that when he asked appellant that question, he was acting "macho" and "did my best to maintain my cool." The trier of fact is the sole judge of a witness's credibility and the weight of the testimony. See Lancon v. State, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). Thus, a trier of fact may choose to believe or disbelieve all or any part of a witness's testimony. See id. In this case, the trial court apparently chose to believe Swindell's testimony that he felt threatened and that he was placed in fear of imminent bodily injury or death. The trial court could have also decided to believe Swindell that he saw a gun, even though the gun was not clearly visible on the videotape of the incident.

Viewing all of the evidence in the light most favorable to the verdict, we hold that the evidence is legally sufficient to establish beyond a reasonable doubt that appellant intentionally or knowingly threatened or placed the victim in fear of imminent bodily injury

_____

[2] The trial court admitted this video into evidence as State's exhibit 1.

6

or death.   Issue two is overruled.

**B. Punishment Hearing**

In issue one, appellant contends the trial court erred by imposing a sixty-year sentence after appellant verbally expressed his disagreement and disappointment with the forty-year sentence the trial court had already pronounced.

**1. Punishment Hearing**

At the punishment hearing in this case, appellant pleaded "True" to the enhancement allegations in the State's "NOTICE OF INTENT TO ENHANCE PUNISHMENT RANGE."   These enhancement allegations included:   (1) "the felony offense of Assault FM W/1 Prior" convicted on April 10, 2007; (2) "the felony offense of Assault FM W/1 Prior" convicted on April 10, 2007; (3) "the felony offense of Unauthorized Use of a Motor Vehicle" convicted on October 31, 2002; and (4) "the felony offense of Unauthorized Use of a Motor Vehicle" convicted on November 13, 2003.   After he pleaded to these enhancement allegations, defense counsel advised the court that "[o]ur understanding is that although the Enhancement contains notice of other convictions, that only one is going . . . to legally increase the range of punishment for the Aggravated Robbery."   In response, the prosecutor stated, "The first two are third-degree felonies, but they were at the same time.   The second two are state jail felonies that we would abandon. . . ."   After the prosecutor abandoned the last two enhancement allegations, the trial court admitted State's exhibits four through twelve.   The prosecutor summarized these exhibits as follows:

> He's [appellant] actually got four prior felony convictions.   He's got an unauthorized use of a motor vehicle out of McLennan County on October

7

31st of 2002. And another unauthorized use of a motor vehicle out of McLennan County on November 13th of 2003. He's got two prior felonies for Assault Family violence, Enhanced out of Lubbock County, one of which was February the 9th of 2006, when he was originally given probation. However, that probation was revoked on April 10th of 2007. And at the same time he received a—another Assault Family violence, Enhanced conviction out of Lubbock County that same date, April 10th of 2007. He also has misdemeanors, Judge. And I believe there are five of those. In 2001, he was convicted of Theft Over 50/under 500 in McLennan County. He was originally given deferred adjudication. However, that deferred adjudication was adjudicated on May 16th of 2002, and he was revoked and sentenced to jail. On August 14th of 2003, he was convicted of Misdemeanor Evading Arrest or Detention in McLennan County. On May the 3rd of 2005, he was convicted of Assault Family violence, a misdemeanor in Lubbock County, Texas. And on April the 20th of 2006, he was convicted in Harris County, Texas, of the offense of Assault. And March the 30th of 2006, he was convicted in Harris County, Texas, of the offense of Terroristic Threat, which was reduced from the allegation charged by the Harris County District Attorney's Office.

Afterwards, the prosecutor argued that appellant had "lived a life of crime" and "that the punishment should be strong and long." Defense counsel did not offer any punishment evidence and waived argument. After both sides rested and closed, the following occurred:

| | |
|---|---|
| The Court: | Then the Court, after considering all the evidence in this case, I am going to assess your punishment at 40 years in the Texas Department of Criminal Justice, Institutional Division. Do you know of any reason why under law you should not be sentenced at this time? |
| The Defendant: | Y'all come see me, man. For real man. |
| | (Outburst from spectators in the gallery.) |
| The Court: | Hearing no reason to bar sentence— |
| The Bailiff: | Hey, one more word and I'm going to take you to jail. |
| The Court: | —it is the sentence of the Court you be confined to the |

8

Texas Department of Criminal Justice, Institutional Division for a term of 40 years. You need to go over your rights in reference to appeal with your attorney.

Defense Counsel: Your Honor, I have a Trial Court Certification to tender to the Court.

The Defendant: Can I say something, Your Honor?

The Court: You need to talk to your lawyer before you say anything. I will sign the Trial Court Certification indicating that—

The Defendant: Bull.

The Court: —you do have full right of appeal.

The Defendant: That's shit.

The Bailiff: You done, Judge?

The Court: We're done.

The Defendant: Forty years for bullshit.

The Court: Could have been a lot worse. I—I can make it a lot worse right now. Let's get back on the record. I can make it a whole lot more right now. Do you want that? Because I'm about to do it to you. It's strictly up to you. I tell you what, I'm going to revise my judgment in this case. I'm going to assess your punishment at 60 years in the Texas Department of Criminal Justice, Institutional Division. Do you have anything else you want to say here in open court about my ruling?

The Defendant: I didn't say nothing else about it, Your Honor.

The Court: Oh, you did. You said plenty. It is the sentence of the Court you be confined to the Texas Department of Criminal Justice, Institutional Division for a term of 60 years. We're adjourned.

Defense counsel did not object to the trial court's decision to increase appellant's punishment from forty to sixty years' confinement. However, defense counsel filed a motion for new trial, asking the trial court to vacate or modify the sixty-year sentence imposed by the court. The trial court denied the motion, signing an order on May 6, 2011.

**2. Applicable Law & Analysis**

In *State v. Aguilera*, the trial court initially sentenced the accused to twenty-five years' confinement for aggravated sexual assault. 165 S.W.3d 695, 696 (Tex. Crim. App. 2005). Later that same day, the trial court reassessed the sentence to fifteen years' confinement. *Id.* The State appealed, and the court of appeals reversed the trial court's judgment and remanded the case for reinstatement of the sentence originally assessed and the corresponding judgment of conviction. *Id.*

The accused appealed to the court of criminal appeals, raising one issue, which asserted "that the court of appeals erred in holding that Texas trial courts do not have the inherent power to vacate, modify, or amend their sentences downward within the time of their plenary power." *Id.* The court of criminal appeals upheld the trial court's ruling, stating:

> At a minimum, a trial court retains plenary power to modify its sentence if a motion for new trial or motion in arrest of judgment is filed within 30 days of sentencing. We hold that a trial court also retains plenary power to modify its sentence if, as in this case, the modification is made on the same day as the assessment of initial sentence and before the court adjourns for the day. The re-sentencing must be done in the presence of the defendant, his attorney, and counsel for the state. Such modifications comport with the provisions of Article 42.09, § 1 [of the Texas Code of Criminal Procedure], that a defendant's sentence begins to run on the day that it is pronounced, and the provisions of TEX. CODE CRIM. PROC. Art.

10

> 42.03, § 1(a), that a felony sentence shall be pronounced in the defendant's presence. In such circumstances, a trial court has the authority to re-sentence a defendant after assessing an initial sentence if the modified sentence is authorized by statute.
>
> In this case, the trial court was acting within its authority when, only a few minutes after it had initially sentenced appellee and before it had adjourned for the day, it modified appellee's sentence.

*Id.* at 697–98 (footnotes omitted).

Aggravated robbery is a first-degree felony. TEX. PENAL CODE ANN. § 29.03(b). A first-degree felony has a punishment range of between five to ninety-nine years or life imprisonment. *Id.* § 12.32 (West 2011). Thus, a sixty-year sentence for aggravated robbery is authorized by statute. In this case, appellant was still in the courtroom and had not begun serving his sentence when he was re-sentenced in open court. As appellant had not begun serving his sentence, the trial court had the authority to modify the sentence upward. We note that the trial court re-assessed punishment in the presence of appellant, defense counsel, and the prosecutor. Therefore, we hold the trial court had authority to re-sentence appellant to sixty years' imprisonment after assessing an initial forty-year sentence. *See Ex parte Lange*, 85 U.S. 163, 174 (1874) (noting that the trial court did have constitutional authority to modify the sentence upwards so long as that sentence had not been "executed."); *Aguilera*, 165 S.W.3d at 698 (holding that "a trial court has the authority to re-sentence a defendant after assessing an initial sentence if the modified sentence is authorized by statute."); *Harris v. State*, 153 S.W.3d 394, 396 n.4 (Tex. Crim. App. 2005) (noting trial court could have properly used its plenary power to modify sentence if new sentence was within the same statutory punishment range).[3]

---

[3] *See also Swartzbaugh v. State*, No. 13-04-00067-CR, 2005 WL 1845764 (Tex. App.—Corpus

### a. Double Jeopardy

Appellant argues that the increase in his sentence to sixty years after the forty-year sentence had been pronounced violated Double Jeopardy[4]; that is, his right not to be punished twice for the same crime. In *Bozza v. United States*, the defendant was convicted of a crime carrying a mandatory minimum sentence of a fine and imprisonment. 330 U.S. 160, 165 (1947). The trial court, however, sentenced him only to imprisonment. *Id.* Later on that same day, the trial court recalled the defendant and imposed both a fine and imprisonment. *Id.* The United States Supreme Court held there was no Double Jeopardy problem, stating that what the trial court had done "did not twice put petitioner in jeopardy for the same offense." *Id.* at 167.

Years later in *United States v. DiFrancesco*, the United States Supreme Court stated that "our Double Jeopardy Clause was drafted with the common-law protections in mind." 449 U.S. 117, 134 (1980). "This accounts for the established practice in the federal courts that the sentencing judge may recall the defendant and increase his

---

Christi, Aug. 4, 2005, pet. ref'd) (mem. opinion, not designated for publication). In *Swartzbaugh*, after the accused pleaded "true" to the State's motion for adjudication, the trial court convicted him of the felony offense of injury to a child. *Id.* at *1. Initially, the trial court orally assessed punishment at eight years' confinement. *Id.* The court then remanded the accused to the custody of the sheriff for safekeeping until the accused could be transported to the Texas Department of Criminal Justice to serve the remainder of his sentence. *Id.* After the accused had been remanded to the sheriff's custody, but before the accused left the courthouse, the trial court realized that he had made a written docket entry for ten years as the term for the accused's sentence. *Id.* Immediately thereafter, the trial court recalled the accused and corrected the sentence to ten years' confinement. *Id.* The accused argued on appeal that "once a defendant has been given a valid sentence, the trial court has no authority to subsequently change that sentence upwards" and "that the trial court's imposition of a second sentence that was greater in length violated the double jeopardy clause of the Texas Constitution." *Id.* This Court, relying on *State v. Aguilera*, 165 S.W.3d 695 (Tex. Crim. App. 2005), "conclude[d] that a trial court has the power to reform a defendant's sentence so long as this reformation is made in open court before the defendant, occurs within the trial court's plenary-power time period, and results in a new sentence that conforms to statutory guidelines. This power includes the power to increase the sentence provided that the defendant has not begun to serve the sentence." *Swartzbaugh*, 2005 WL 1845764, at *4.

[4] *See* U.S. CONST. amend. V; TEX. CONST. art. 1, § 14. Both are conceptually identical. *See Stephens v. State*, 806 S.W.2d 812, 814–15 (Tex. Crim. App. 1990).

sentence, at least (and we venture no comment as to this limitation) so long as he has not yet begun to serve that sentence." *Id.*

In addition, we find Justice Cochran's concurring opinion in *Aguilera* persuasive and on point with regard to this issue:

> Although the Court does not expressly say so, the rule set out in the majority opinion sets the finality of the sentencing process for both upward and downward alterations. A good rule generally works both ways. If a trial judge has authority to decrease a sentence before the defendant begins to serve that sentence—as the majority correctly holds—then surely he has equal authority to increase it if double jeopardy is no bar. As noted . . . double jeopardy is no bar.

*Aguilera*, 165 S.W.3d at 702 (Cochran, J., concurring).

### b. Due Process

Next, appellant argues that imposing a "second sentence" after the trial was over violated his right to due process of law. Appellant, however, has cited no authority to support this assertion. Appellant's failure to brief this issue constitutes a waiver of the argument. *See Tong v. State*, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000) (stating that failure to cite relevant authority waives error).

Nevertheless, even if appellant had preserved this argument, we find no due-process violation. The touchstone of due process is fundamental fairness. *Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973). "[A] trial court's arbitrary refusal to consider the entire range of punishment in a particular case violates due process." *Ex parte Brown*, 158 S.W.3d 449, 456 (Tex. Crim. App. 2005). Likewise, a trial court "denies due process when it refuses to consider the evidence and imposes a predetermined sentence." *Cole v. State*, 931 S.W.2d 578, 579–80 (Tex.

13

App.—Texarkana pet. ref'd). However, "the defendant has no substantive right to a particular sentence within the range authorized by statute, . . . ." *Gardner v. Florida*, 430 U.S. 349, 358 (1977). "When a defendant waives a jury, the trial judge has discretion to assess the punishment within the range provided by law which he finds appropriate in the circumstances." *Morano v. State*, 572 S.W.2d 550, 551 (Tex. Crim. App. 1978). "The decision of what particular punishment to assess within the statutorily prescribed range for a given offense is a normative, discretionary function." *Barrow v. State*, 207 S.W.3d 377, 379–80 (Tex. Crim. App. 2006). "Subject only to a very limited, 'exceedingly rare,' and somewhat amorphous Eighth Amendment gross-disproportionality review, a punishment that falls within the legislatively prescribed range, and that is based upon the jury's (or trial court's, in a bench trial) informed normative judgment, is unassailable on appeal." *Id.* at 381 (footnote number omitted).

In this case, the record shows that after the trial court imposed the forty-year sentence, appellant asked permission to speak. The trial court replied, "You need to talk to your lawyer before you say anything. I will sign the Trial Court Certification indicating that--[.]" At that point, he interrupted the trial court by saying, "Bull." After the trial court said, "[Y]ou do have full right of appeal", appellant stated, "That's shit." Appellant continued by saying, "Forty years for bullshit." After the trial court heard this, he re-sentenced appellant to sixty years' imprisonment.

Even though appellant did not testify at the punishment hearing, the trial court became aware of appellant's attitude concerning his conviction for aggravated robbery and his criminal history, dismissing it as "[f]orty years for bullshit." Thus, the trial court

14

could have concluded that appellant was not taking his many criminal transgressions seriously, which warranted a stronger sentence of sixty years' imprisonment. Thus, the trial court had ample support for a sixty-year sentence, which falls well within the punishment range for a first-degree felony. The record does not show that the trial court arbitrarily imposed a predetermined punishment or that it failed to consider the full punishment range. Accordingly, the trial court did not abuse its discretion when assessing punishment. *See Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (stating that a trial court abuses its discretion when it acts without reference to any guiding rules and principles, or if it acts in an arbitrary or capricious manner). We hold that appellant has failed to show that the trial court violated his due-process rights in re-assessing his punishment.

### c. Cruel and Unusual Punishment

Lastly, appellant argues the increase in punishment violated his constitutional right to be free from cruel and unusual punishment, and citing *Harmelin v. Michigan*, 501 U.S. 957 (1990), he "suggests that the increased punishment is constitutionally disproportionate to the transgression[.]" The Eighth Amendment to the United States Constitution, prohibiting cruel and unusual punishment, does not require strict proportionality between the crime and the sentence; rather, it forbids extreme sentences that are "grossly disproportionate" to the crime. *Ewing v. California*, 538 U.S. 11, 23 (2003). The precise contours of the "grossly disproportionate" standard are unclear, but it applies only in "exceedingly rare" and "extreme" cases. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003). Texas courts have traditionally held that, as long as the punishment

15

assessed falls within the punishment range prescribed by the Legislature in a valid statute, the punishment is not excessive. *See Jordan v. State*, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973); *Trevino v. State*, 174 S.W.3d 925, 928 (Tex. App.—Corpus Christi 2005, pet. ref'd); *see also Escochea v. State*, 139 S.W.3d 67, 80 (Tex. App.—Corpus Christi 2004, no pet.).[5]

Appellant's sentence fell within the punishment range for a first-degree felony. *See* TEX. PENAL CODE ANN. § 12.32(a) (stating that "[a]n individual adjudged guilty of a felony of the first degree shall be punished by imprisonment in the Texas Department of Criminal Justice for life or for any term of not more than 99 years or less than five years."). However, that does not end the inquiry. Texas courts recognize that a prohibition against a grossly disproportionate sentence survives under the federal constitution apart from any consideration whether the punishment assessed is within the statute's punishment range. *Winchester v. State*, 246 S.W.3d 386, 388 (Tex. App.—Amarillo 2008, pet. ref'd); *Mullins v. State*, 208 S.W.3d 469, 470 (Tex. App.—Texarkana 2006, no pet.).

This Court has recognized that "the viability and mode of application of proportionate analysis . . . has been questioned since the Supreme Court's decision in *Harmelin v. Michigan*, 501 U.S. 957 (1991)." *Trevino*, 174 S.W.3d at 928 (citing *McGruder v. Puckett*, 954 F.2d 313, 315–16 (5th Cir. 1992) (discussing the various opinions issued in *Harmelin* and their impact on the *Solem* decision[6])); *see Sullivan v.*

---

[5] *Vera v. State*, Nos. 13-05-00169, 13-05-00170-CR, 2006 WL 5181930, *3 (Tex. App.—Corpus Christi Aug. 29, 2008, pet. ref'd) (mem. op., not designated for publication).

[6] *See Solem v. Helm*, 463 U.S. 272 (1983).

16

*State*, 975 S.W.2d 755, 757–58 (Tex. App.—Corpus Christi 1998, no pet.) (discussing the implications of the *Harmelin* opinion and reviewing the proportionality of defendant's sentence under the *Solem* and *McGruder* tests). Assuming, *arguendo*, the viability of a proportionality review, as we did in *Sullivan,* we will apply both the *Solem* and *McGruder* tests to the facts of this case. *See Sullivan*, 975 S.W.2d at 757–58.[7] In both *Solem* and *McGruder,* we look first at the gravity of the offense and the harshness of the penalty. *Solem*, 463 U.S. at 290–91; *McGruder*, 954 F.2d at 316.

### 1. *Gravity of the Offense*

We judge the gravity of the offense in light of the harm caused or threatened to society and the offender's culpability. *Moore v. State*, 54 S.W.3d 529, 542 (Tex. App.—Fort Worth 2001, pet. ref'd) (citing *Solem*, 463 U.S. 291-92). With respect to appellant's culpability, the evidence and testimony pointed to appellant as the perpetrator. With respect to the harm caused or threatened to society, Swindell testified appellant's conduct placed him in fear of imminent bodily injury or death. He thought that appellant might shoot him. We conclude that the gravity of the offense weighs in favor of a finding that the punishment was not excessive.

### 2. *Harshness of the Penalty*

Appellant was found guilty of the first-degree felony offense of aggravated robbery. The offense appellant committed is classified within the second most serious category of offenses in Texas; only capital-offense felonies are more serious. *See* TEX. PENAL CODE ANN. § 12.04(a) (West 2003) (classifying felonies according to the relative seriousness of

---

[7] *See also McGiffin v. State*, No. 13-05-00561-CR, 2006 WL 2294553, at *1 (Tex. App.—Corpus Christi, Aug. 10, 2006, no pet.) (mem. op., not designated for publication).

the offense). Thus, the Legislature considered the crime of aggravated robbery serious enough to deserve a sentence of up to life imprisonment. Appellant's sixty-year sentence fell well within the punishment range for a first-degree felony. *See* Tex. Penal Code Ann. § 12.32(a). In light of the seriousness of the crime of which appellant was found guilty and the fact that he had a lengthy criminal history, we cannot say his sixty-year sentence is disproportionate to his offense. We therefore find that his punishment is not grossly disproportionate to the offenses for which he was convicted. This finding ends our analysis under *McGruder*. *See McGruder*, 954 F.2d at 316; *see also Sullivan*, 975 S.W.2d at 757.

Because there is no evidence in the appellate record of the sentences imposed for other similar crimes in Texas or for the same crimes in other jurisdictions, we cannot perform a comparative evaluation using the remaining *Solem* factors. *See Solem*, 463 U.S. at 292; *see also Sullivan*, 975 S.W.2d at 757–58. Therefore, we hold that appellant's punishment is neither grossly disproportionate nor cruel and unusual. We overrule issue one.

### III. Conclusion

We affirm the trial court's judgment.

ROSE VELA
Justice

Do not publish.
Tex. R. App. P. 47.2(b).

Delivered and filed the
16th day of February, 2012.

18