ACCEPTED
04-15-00265-CR
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
7/21/2015 1:56:29 PM
KEITH HOTTLE
CLERK

## NOS. 04-15-00265-CR & 04-15-00266-CR

## IN THE COURT OF APPEALS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
7/21/2015 1:56:29 PM
KEITH E. HOTTLE
Clerk

## FOR THE

## FOURTH COURT OF APPEALS DISTRICT

## OF TEXAS

## SAN ANTONIO, TEXAS

**ARESTEDE JAMES TREADWAY,**
**Appellant**

**VS.**

**THE STATE OF TEXAS,**
**Appellee**

**Trial Cause Nos. 2013-CR-11505 & 2013-CR-11506**
**Appeal from the 175th District Court of**
**Bexar County, Texas**
**Hon. Mary Roman, Presiding**

## BRIEF FOR APPELLANT

**MICHAEL D. ROBBINS**
**Assistant Public Defender**
**Paul Elizondo Tower**
**101 W. Nueva St., Suite 370**
**San Antonio, Texas 78205**
**ORAL ARGUMENT**          **(210) 335-0701**
**NOT REQUESTED**          **FAX (210) 335-0707**
                           **mrobbins@bexar.org**
                           **Bar No. 16984600**

                           **ATTORNEY FOR**
                           **APPELLANT**

i

## Identity of Parties and Counsel

Pursuant to TEX. R. APP. P. 38.1(a) (West 2015), the parties to this suit are as follows:

(1) **ARESTEDE JAMES TREADWAY,** TDCJ #02002220, Garza West Transfer Facility, 4250 Highway 202, Beeville, Texas 78102, is the appellant and was the defendant in trial court.

(2) The **STATE OF TEXAS**, by and through the Bexar County District Attorney's Office, Paul Elizondo Tower, 101 W. Nueva St., San Antonio, Texas 78205, is the appellee and prosecuted this case in the trial court.

The trial attorneys were as follows:

(1) Arestede James Treadway was represented by **ROBERT F. GEBBIA**, 107 Woodward Place, San Antonio, Texas 78204.

(2) The State of Texas was represented by **NICHOLAS LAHOOD,** District Attorney, and **JENNA REBLIN,** Assistant District Attorney, Paul Elizondo Tower, 101 W. Nueva St., San Antonio, Texas 78205.

The appellate attorneys are as follows:

(1) Arestede James Treadway is represented by **MICHAEL D. ROBBINS**, Assistant Public Defender, Paul Elizondo Tower, 101 W. Nueva St., Suite 370, San Antonio, Texas 78205.

(2)　　The State of Texas is represented by the **BEXAR COUNTY DISTRICT ATTORNEY'S OFFICE**, Appellate Division, Paul Elizondo Tower, 101 W. Nueva St., Suite 710, San Antonio, Texas 78205.

The trial judge was **HON. MARY ROMAN,** 175th District Court, Cadena-Reeves Justice Center, 300 Dolorosa St., 4th Floor, San Antonio, Texas 78205.

# Table of Contents

Page

Identity of Parties and Counsel . . . . . . . . . ii

Table of Contents . . . . . . . . . . iv

Table of Authorities . . . . . . . . . vi

A Note Regarding Record References . . . . . . . viii

Statement Regarding Oral Argument . . . . . . . viii

Statement of the Case . . . . . . . . . 1

Issues Presented . . . . . . . . . . 3

### APPELLANT'S FIRST POINT OF ERROR
The evidence was legally insufficient to support the trial court's finding that Mr. Treadway intentionally or knowingly entered a habitation and attempted to commit and committed aggravated assault.

### APPELLANT'S SECOND POINT OF ERROR
The evidence was legally insufficient to support the trial court's finding that Mr. Treadway intentionally or knowingly entered a habitation and attempted to commit and committed theft.

### APPELLANT'S THIRD POINT OF ERROR
Mr. Treadway's right to be free from double jeopardy was violated when he was convicted twice for burglary of a habitation, arising from the same entry.

Statement of Facts . . . . . . . . . . 4

Summary of the Argument . . . . . . . . 11

Argument . . . . . . . . . . . 12

Appellant's First Point of Error (Restated) . . . . . 12

Appellant's Second Point of Error (Restated) . . . . 12

Appellant's Third Point of Error (Restated) . . . . . 18

Conclusion and Prayer . . . . . . . . . 22

Word Count Certificate of Compliance . . . . . . 23

Certificate of Service . . . . . . . . . 23

# **Table of Authorities**

Page

## Constitution

TEX. CONST. art. I, § 14 . . . . . . . . . 4

U.S. CONST. amend. V . . . . . . . . . 7,18

U.S. CONST. amend. XIV . . . . . . . . .14,18

## Statutes

TEX. PENAL CODE § 22.01 (West 2011) . . . . . . 14

TEX. PENAL CODE § 30.02 (West 2011) . . . . . 1,13,21

TEX. PENAL CODE § 31.03 (West 2011) . . . . . . 14

## Rules

TEX. R. APP. P. 9.4 (West 2015). . . . . . . . 23

TEX. R. APP. P. 38.1 (West 2015) . . . . . . . ii

TEX. R. APP. P. 44.2 (West 2015) . . . . . . . 17

## Cases

*Benton v. Maryland*, 395 U.S. 784 (1969) . . . . . 18

*Bigon v. State*, 252 S.W.3d 360 (Tex. Crim. App. 2008) . . . . 21

*Carrizales v. State*, 414 S.W.3d 737 (Tex. Crim. App. 2013) . . . 14

*Davila v. State*, 547 S.W.2d 606 (Tex. Crim. App. 1977) . . . . 13

*Davis v. State*, 313 S.W.3d 317 (Tex. Crim. App. 2010) . . . . 20

*Dobbs v. State*, 434 S.W3d 737 (Tex. Crim. App. 2013) .    .    .    .13,14

*Ex parte Cavazos*, 203 S.W.3d 333 (Tex. Crim. App. 2006)    .    .    19,20,21

*Ex parte Ward*, 964 S.W.2d 617 (Tex. Crim. App. 1998) .    .    .    .    19

*Gollihar v. State*, 46 S.W.3d 243 (Tex. Crim. App. 2001) .    .    .    .17,18

*Gonzalez v. State*, 8 S.W.3d 640 (Tex. Crim. App. 2000) .    .    .    .    19

*Illinois v. Vitale*, 447 U.S. 410 (1980) .    .    .    .    .    .    .    19

*Jackson v. Virginia*, 443 U.S. 307 (1979)    .    .    .    .    .    .    13

*Johnson v. State*, 571 S.W.2d 170 (Tex. Crim. App. 1978)    .    .    .    14

*Long v. State*, 130 S.W.3d 419 (Tex. App. – Houston [14th Dist.] 2004, no pet.)
.    .    .    .    .    .    .    .    .    .    .    .    .    19

*Matamoros v. State*, 901 S.W.2d 470 (Tex. Crim. App. 1997)    .    .    .    14

*Mayer v. State*, 309 S.W.3d 552 (Tex. Crim. App. 2010) .    .    .    .    12

*Shaffer v. State*, 477 S.W.2d 873 (Tex. Crim. App. 1972) .    .    .    .    21

*Smith v. State*, 363 S.W.3d 761 (Tex. App. – Austin 2012, no pet.)    .    .    12

*Stephens v. State*, 806 S.W.2d 812 (Tex. Crim. App. 1990)    .    .    .    19

*White v. State*, 395 S.W.3d 828 (Tex. App. – Fort Worth 2013, no pet.)    .    21

*Williams v. State*, 937 S.W.2d 479 (Tex. Crim. App. 1996)    .    .    .    12

## A Note Regarding Record References

This appeal embraces two separate interrelated cases which were tried together. There are five volumes in the reporter's record of the combined trial. In this brief, references to the reporter's record will be thus: (RR 2, ___) There are two separate clerk's records because there were two cause numbers. References to the clerk's record of 2013-CR-11505 will be thus: (CR 11505, ___). References to the clerk's record of 2013-CR-11506 will be thus: (CR 11506, ___).

## Statement Regarding Oral Argument

The issues raised in this appeal may be determined from the record and legal authorities alone. For that reason, the undersigned counsel does not request oral argument, but will present oral argument if it is requested by the State and granted by the Court.

TO THE COURT OF APPEALS FOR THE FOURTH COURT OF APPEALS DISTRICT OF TEXAS:

This brief is filed on behalf of Appellant, Arestede James Treadway, by Michael D. Robbins, Assistant Public Defender.

### Statement of the Case

Appellant Arestede James Treadway was charged by indictment in Cause No. 2013-CR-11505 with the offense of burglary of a habitation by attempting and committing aggravated assault[1] - habitual offender. (CR 11505, 5-6). He was charged by indictment in Cause No. 2013-CR-11506 with the offense of burglary of a habitation by attempting to commit and committing theft[2] - habitual offender. (RR 11506, 7-8). Mr. Treadway waived a jury and was tried by the court. (RR 11505, 14; RR 11506, 9). Mr. Treadway pleaded not guilty in both cases. (RR 2, 14-15. Following evidence and arguments of counsel, the trial court found Arestede James Treadway guilty in both cases. (CR 11505, 19-20; CR 11506, 20-21; RR 3, 44-450). Appellant elected that the court assess punishment in case of conviction. (CR 11505, 13; CR 11506, 13). Mr. Treadway stipulated to the

---

[1] A felony of the first degree, in violation of TEX. PENAL CODE §§ 30.02(a)(3) & (d) (West 2011). Mr. Treadway was convicted under Count I, Paragraph B, of the indictment. (RR 3, 44-45). The indictment also contained a count alleging aggravated assault with a deadly weapon, for which he was acquitted. (RR 4, 8).

[2] A felony of the second degree, in violation of TEX. PENAL CODE §§ 30.02(a)(1), (a)(3) & (c)(2) (West 2011). He was convicted under Count I, Paragraph B. (RR 3, 44-45).

enhancement allegations. (CR 11505, 13; CR 11506, 15-16; RR 4, 5). The court assessed two concurrent 25-year sentences. (CR 1505, 19-20; CR 11506, 20-21; RR 4, 8). The court certified Mr. Treadway's right of appeal. (CR 11505, 18; CR 11506, 19). Appellant timely filed notice of appeal. (CR 11505, 21-22, 34-35; CR 11506, 22-23, 28-29). The trial court appointed the Bexar County Public Defender's Office to represent Mr. Treadway on appeal. (CR 11505, 33; CR 11506, 34). This appeal follows.

## Issues Presented

### Appellant's First Point of Error

The evidence was legally insufficient to support the trial court's finding that Mr. Treadway intentionally or knowingly entered a habitation and attempted to commit and committed aggravated assault.

### Appellant's Second Point of Error

The evidence was legally insufficient to support the trial court's finding that Mr. Treadway intentionally or knowingly entered a habitation and attempted to commit and committed theft.

### Appellant's Third Point of Error

Mr. Treadway's right to be free from double jeopardy was violated when he was convicted twice for burglary of a habitation, arising form the same entry.

## Statement of Facts[3]

**Mr. Treadway misplaces the keys to his truck.**

The complainant in both of these cases was **Shaun Smagacz,** who owned a company which did excavation work. (RR 2, 21). Arestede Treadway was one of the Smagacz's contract workers and the two men were friends. During the spring of 2013, Mr. Smagacz resided at an address on Heather's Cove in Bexar County. (RR 2, 24). Ms. Smagacz's company was working a job site on April 12, 2013, and Mr. Treadway worked the job. Mr. Treadway rode to the site with another worker, Wilson Brown, and accidentally left the keys to his own truck in Mr. Brown's truck at the end of the day. Mr. Brown left for Floresville after a job, leaving Mr. Treadway and his truck stranded at Mr. Smagacz's house. (RR 2, 25).

Mr. Smagacz let Mr. Treadway spend the night at his house. They watched TV, played basketball and ordered a pizza. Mr. Smagacz had to go to work the following day – a Saturday – and Mr. Treadway spent the day at Mr. Smagacz's house. Mr. Smagacz was not feeling well the following day, Sunday. (RR 2, 26). Mr. Smagacz wanted to play basketball with Mr. Treadway to sweat out whatever it was that made him feel bad. They played for an hour at a court down the street from Mr. Smagacz's house.  Mr. Treadway acted unusually during the game when an elderly man walked by and Mr. Treadway said that the man was there to spy on

---

[3] This brief will present the testimony as given at trial. Appellant does not concede that it is true.

him. (RR 2, 27). Mr. Smagacz felt that Mr. Treadway was having delusions at one point, when he got into Mr. Smagacz's face and threatened to injure him with a shank, as if he was in jail. (RR 2, 28).

After the game, at about 2:00 p.m., Mr. Smagacz ordered a pizza. Mr. Treadway went outside to clean his truck. Wilson Brown called several hours later. (RR 2, 29). Mr. Smagacz approached Mr. Treadway and said that they should go and retrieve Mr. Treadway's keys. Mr. Treadway refused to go with Mr. Smagacz to get the keys. (RR 2, 30). Mr. Smagacz secured the garage door and set the burglar alarm to his house. He did not give Mr. Teadway permission to enter his house. (RR 2, 31).

The trip to retrieve the keys took about 15 minutes. When Mr. Smagacz returned home, he saw Mr. Treadway's truck unattended in the driveway. He opened the garage door to enter his house. (RR 3, 32). He entered his house through the laundry room, and found Mr. Treadway standing on top of the washer and drier, going through the cabinets. The burglar alarm was sounding. Nothing belonging to Mr. Treadway was in the cabinets, or in the house. (RR 2, 33). Mr. Treadway denied breaking into the house. Mr. Smagacz's pistol was in Mr. Treadway's back pocket. It should have been in the drawer in the computer desk. (RR 2, 34). Mr. Treadway pulled the gun, pointed it at Mr. Smagacz, and told him

5

not to move. The gun was pointed directly at Mr. Smagacz's face. Mr. Smagacz felt threatened. (RR 2, 35).

Mr. Smagacz back-stepped toward the master bedroom, where there was an assault rifle. Mr. Treadway told him to put his hands up and not to move. (RR 2, 36). He asked Mr. Smagacz where the money was. Mr. Smagacz replied that he did not have any money in the house, which was not true. Mr. Treadway punched Mr. Smagacz over his left eye. When Mr. Smagacz asked why he was doing this, Mr. Treadway punched him again. (RR 2, 37). The punches caused Mr. Smagacz to fall to one knee. Mr. Treadway again asked for money. Mr. Smagacz heard a gunshot. The gun was pointed directly at him. The two men were about four feet apart. Mr. Treadway did not look like himself, and was delusional. (RR 2, 38). His eyes looked funny. Mr. Treadway pulled the trigger again, but there was no shot. Although he was afraid, Mr. Smagacz was not struck by a bullet. From all appearances, Mr. Treadway intended to shoot the gun. (RR 2, 39).

Mr. Smagacz feared for his life. He kicked the gun out of Mr. Treadway's hand. By that time, they were in the bedroom. The gun fell to the bed or the floor. The two men got into a wrestling match. Mr. Smagacz grabbed the gun and ran out of the room. (RR 2, 40). He ran out of his house through the garage. He did not know whether Mr. Treadway pursued him or not. He encountered a neighbor who heard the shot, and he told the neighbor to call the police. Mr. Smagacz kept his

6

rifle under his bed, but it was not there when he was able to re-enter his house. (RR 2, 41). The police did not recover the rifle. (RR 2, 42).

Mr. Smagacz did not provide Mr. Treadway with a key to his house. Mr. Treadway stayed on the living room floor and in the garage during his stay in Mr. Smagacz's house. (RR 2, 52). Mr. Treadway broke into the house, probably using a crowbar, while Mr. Smagacz was away. (RR 2, 56). Mr. Smagacz did not know where the crowbar was. (RR 2, 57). He did not know whether Mr. Treadway was on drugs. He did not see Mr. Treadway use drugs, and they did not use drugs together. (RR 2, 62). Mr. Smagacz believed that the clip fell out of his pistol when Mr. Treadway hit him on the head, which is why there was no second shot. The magazine from the pistol was found on the bed. (RR 2, 65).

**Eric Woodard** was a patrol officer with the San Antonio Police Department. He was dispatched to the address on Heathers Cove for a burglar alarm. (RR 2, 75). While en route, he received a second dispatch for a burglary in progress. When he arrived, he searched the house, with Mr. Smagacz's consent. He found a 9 millimeter handgun, and the accompanying magazine. He also found a 9 millimeter shell casing. The back door of the house was locked, but had been forced open. The frame was broken. (RR 2, 76).

**Arestede James Treadway** waived his Fifth Amendment rights and testified on his own behalf. He did not attempt to gain entry into Mr. Smagacz's

home with intent to commit theft or felony. (RR 3, 7). Mr. Treadway denied that he went into the house after being told not to, but he admitted to triggering the burglar alarm. (RR 3, 9). He did not kick in the back door. He did not take any money from Mr. Smagacz, although he asked Mr. Smagacz for his pay. (RR 3, 10). He told the police that he did not remember anything, although that was not true. (RR 3, 11-12). He did not tell the police about the fight. (RR 3, 12). Mr. Treadway was changing his clothes from the washer to the drier when Mr. Smagacz entered the house, and Mr. Smagacz pushed him against the washer. The burglar alarm was not sounding. (RR 3, 13). Mr. Treadway called the police, and left the area with a female friend who came to give him a ride. He went to a Valero store. (RR 3, 14). Mr. Treadway did not shoot at Mr. Smagacz. (RR 3, 15). Mr. Treadway triggered the alarm by opening and interior door.

Mr. Treadway's keys, phone, and wallet were in the house. (RR 3, 15-16). The only things Mr. Treadway intended to take from the house were his own belongings. (RR 3, 16). When Mr. Smagacz left to go get Mr. Treadway's keys, he left the garage door open. (RR 3, 18). Mr. Treadway caused the broken door when he ran from the scene. (RR 3, 21). Indeed, Mr. Treadway left the scene while Mr. Smagacz was away, and only returned when Mr. Smagacz drove past him on his way home. When Mr. Treadway got back, Mr. Smagacz was in the garage. (RR 3, 27). Mr. Treadway asked whether the washing machine cycle was done. Mr.

Smagacz walked to Mr. Treadway's truck and threw some clothes into the passenger seat. Mr. Treadway entered the house to get the rest of his clothes. (RR 3, 27-28).

Mr. Treadway did not know that he had triggered the alarm. Mr. Smagacz told Mr. Treadway to leave his house, and he pushed Mr. Treadway against the washing machine. (RR 3, 29). Mr. Treadway first saw the gun when Mr. Smagacz grabbed it from a counter. Mr. Smagacz pushed Mr. Treadway, and Mr. Treadway struck Mr. Smagacz. According to Mr. Treadway, "I didn't hit him in the face until after he had the gun in his hand." Mr. Smagacz struck his head on the cabinet door. Mr. Treadway did not hit him on the head, shoot him, or attempt to shoot him. (RR 3, 30). Mr. Treadway never had control of the gun. Mr. Smagacz attempted to pull the trigger. The gun either misfired or went off when the two men were fighting over control of it Mr. Smagacz did not kick the gun out of Mr. Treadway's hands, and Mr. Treadway did not get on top of the washer. (RR 3, 31). Mr. Treadway admitted to being under the influence of narcotics that day. He had taken "ice"[4] and a couple of Xanax. (RR 3, 32)

**Conviction and punishment.**

Following argument of counsel, the trial court convicted Arestede James

---

[4] Methamphetamine. *See*   http://easyread.drugabuse.gov/meth-facts.php (last accessed on July 20, 2015).

Treadway of burglary, in both cases. (CR 11505, 19-20; CR 11506, 20-21; RR 3, 44-45). Mr. Treadway elected that the court assess punishment in case of conviction. (CR 11505, 13; RR 11506, 14). Mr. Treadway pleaded true to the enhancement allegations. (RR 4, 5). The trial court assessed concurrent sentences of 25 years. (CR 11505, 19-20; CR 11506, 20-21; RR 4, 8). The trial court correctly certified that these were not plea bargained cases and that Appellant had the right to appeal. (CR 11505, 18; CR 11506, 19). Mr. Treadway filed timely notices of appeal. (CR 11595, 21-22, 34-35; CR 11506, 22-23, 28-29). The trial court appointed the Bexar County Public Defender's Office to represent Mr. Treadway on appeal. (CR, 11505, 33; RR 11506, 34). This appeal follows.

## Summary of the Argument

**First and Second Points of Error.** When reviewing a legal sufficiency of the evidence claim in a criminal case, the appellate court will look at the evidence in a light favorable to the verdict, and will determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. In this case, no rational trier of fact could have found beyond a reasonable doubt that Arestede James Treadway attempted to commit theft, committed theft, attempted to commit aggravated assault, or committed aggravated assault. Therefore, the evidence was legally insufficient to support either conviction.

**Third Point of Error.** In addition, Mr. Treadway was convicted of burglary of a habitation by attempting to commit and committing aggravated assault, as well as burglary of a habitation by attempting to commit theft and committing theft, arising from the same entry into Mr. Smagacz's home. The allowable unit of prosecution for burglary is unlawful entry. Mr. Treadway's double jeopardy rights were violated by these multiple convictions for the same thing, and he may raise this issue initially on appeal.

## Argument

### Appellant's First Point of Error (Restated)

The evidence was legally insufficient to support the trial court's finding that Mr. Treadway intentionally or knowingly entered a habitation and attempted to commit and committed aggravated assault.

### Appellant's Second Point of Error (Restated)

The evidence was legally insufficient to support the trial court's finding that Mr. Treadway intentionally or knowingly entered a habitation and attempted to commit and committed theft.

This case involves a single set of facts arising under the burglary statute.[5] Therefore, they will be briefed together. After the state rested, defense counsel moved for a directed verdict. The trial court denied the motion.[6] (RR 2, 80). The denial of a motion for directed verdict is reviewed the same as a review of legal sufficiency of the evidence, *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996). Additionally, legal sufficiency of the evidence may be raised for the first time on appeal. *Mayer v. State*, 309 S.W.3d 552, 555 (Tex. Crim. App. 2010).

The indictment in 2013-CR-11505 alleged, in Count I, Paragraph B, alleged that Mr. Treadway "did intentionally and knowingly enter a habitation, and therein

---

[5] In making this sufficiency of the evidence argument, Mr. Treadway does not waive his argument in his Third Point of Error that the two burglary convictions for the same entry constitute double jeopardy.

[6] Technically, there is no verdict in a bench trial. However, the word "verdict" is used loosely in the statutes and the case law, and the motion was therefore proper. *Smith v. State*, 363 S.W.3d 761, 772-73 n. 6 (Tex. App. – Austin 2012, no pet.).

attempted to commit and committed the felony offense of AGGRAVATED ASSAULT, without the effective consent of Shawn Smagacz, the owner …." (CR 11505, 5). The indictment in 2013-CR-11506 alleged, in Count I, Paragraph B, that Mr. Treadway "did intentionally and knowingly enter a habitation, and therein attempted to commit and committed theft, without the effective consent of Shawn Smagacz, the owner…." (CR 11506, 7. As charged in these cases, the elements of burglary of a habitation are: (1) a person, (2) without the effective consent of the owner (3) intentionally or knowingly (4) enters a habitation (5) and commits or attempts to commit a felony, theft, or assault. TEX. PENAL CODE § 30.02(a)(3) (West 2011); *Davila v. State*, 547 S.W.2d 606, 608 (Tex. Crim. App. 1977) (supplying the "intentionally or knowingly" element).

Legal sufficiency of the evidence "is an essential of the due process guaranteed by the Fourteenth Amendment that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof – defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia.* 443 U.S. 307, 316 (1979). The standard of review is whether, when viewed in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Id*. At 319; *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). Circumstantial evidence is as probative as direct

13

evidence in establishing the guilt of the defendant, and a finding of guilt may be predicated on circumstantial evidence alone. *Id.* (citing *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013)). "The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses [citation omitted]. When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination."[7] *Id.* However, the appellate court does have the duty "to position itself as a final due process safeguard ensuring only the rationality of the factfinder." *Matamoros v. State*, 901 S.W.2d 470, 474 (Tex. Crim. App. 1995).

In this case, the indictments alleged attempted commission and commission of aggravated assault (CR 11505, 5) and theft (CR 11506, 7). Each of those offenses has its own culpable mental state. Theft requires intent to deprive the owner of property. TEX. PENAL CODE § 31.03(a) (West 2011). Aggravated assault requires intentionally, knowingly, or recklessly causing bodily injury, or intentionally or knowingly threatening bodily injury. TEX. PENAL CODE §§ 22.01(a)(1), (a)(2) & 22.02(a) (West 2011).

**Application.**

Mr. Treadway at no time attempted to commit theft, committed theft,

---

[7] The rule applies to the judge in a trial before the court. *Johnson v. State*, 571 S.W.2d 170, 173 (Tex. Crim. App. 1978).

attempted to commit aggravated assault, or committed aggravated assault. The reasons for him going into the house while Mr. Smagacz was away were succinctly summed up during the State's cross-examination of him:

Q.    Well, did you know where the rifle was?

A.    No, ma'am.

Q.    Did you take the rifle from his house?

A.    No, ma'am.

Q.    Did you take anything from his house?

A.    No, ma'am.

Q.    Did you intend to take something from his house?

A.    My clothes and personal effect, yes.

Q.    The complainant testified that there was nothing – none of your belongings in his home.

A.    No, ma'am, to this day, there is personal property of mine inside that home.

(RR 4, 16-17).

Mr. Treadway went on to say that he did not break into the house, and that Mr. Smagacz activated the burglar alarm himself, while they were in the garage. (RR 3, 17). Mr. Treadway testified earlier that he did not seek to take any money, except for what was coming to him for back pay. (RR 4, 11). This testimony negates the necessary intent to deprive the owner, Mr. Smagacz, of property, and

therefore negates the theft element of 2013-CR-11506 and defeats the burglary conviction in that case.

Likewise, the evidence negates the aggravated assault element of 2013-CR-11505. Mr. Treadway testified on re-direct that the physical altercation began when Mr. Smagacz "physically pushed me against the washer but I think he was attempting to get by me, like I said." (RR 3, 29). The testimony continued:

Q. What were you guys fighting about?

A. We had already been like a little contentious relationship. The thing is, I believe at that time I think he was trying to go for his gun then. That's what I think. Because the same direction he ran and pushed me, when he pushed past me, he attempted to retrieve that weapon.

Q. When was the first time you saw the gun?

A. It was when he grabbed the gun off the counter.

Q. Where was the gun?

A. It was on the counter, like around the corner of the hallway, about maybe four or five feet away from the laundry room.

Q. Okay. Did you hit him first?

A. After he pushed me, I did strike him.

Q. And where did you hit him?

A. I would say in the upper chest area. I didn't hit him in the face until after he had the gun in his hand.

\*\*\*\*\*     \*\*\*\*\*     \*\*\*\*\*

Q. Did you shoot him?

16

A.     No, I didn't.

Q.     Did you attempt to shoot him?

A.     No, I didn't.

Q.     Did you point the gun at him?

A.     No, I never had control of the gun.
(RR 4, 29-31).

This testimony clearly negates the aggravated assault element. Although it was not argued during the trial, Mr. Treadway might have even raised the defense of using force to defend himself. In any event, he did not commit burglary as charged, because he did not attempt to commit or actually commit aggravated assault.

**Harm analysis.**

Legal sufficiency of the evidence invokes constitutional issues. *Gollihar v. State*, 46 S.W.3d at 245-46. If the record reveals constitutional error that is subject to harmless error review, "the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a) (West 2015). The error complained of here contributed to Mr. Treadway's conviction. The evidence clearly shows that he did not commit theft, attempt to commit theft, commit aggravated assault, or attempt to commit aggravated assault.

"[T]he remedy for a finding of legally insufficient evidence on appeal is acquittal." *Gollihar v. State*, 46 S.W.3d at 246. Therefore, the judgments of conviction should be reversed, and judgments of acquittal should be rendered.

## Appellant's Third Point of Error (Restated)

> Mr. Treadway's right to be free from double jeopardy was violated when he was convicted twice for burglary of a habitation, arising from the same entry.

Mr. Treadway was indicted in Cause No. 2013-CR-11505 with the offense of burglary of a habitation by attempting to commit and committing aggravated assault. (CR 11505, 5-6). He was indicted in Cause No. 2013-CR-11506 with the offense of burglary of a habitation by attempting to commit and committing theft. (CR 11506, 7-8). These charges both alleged that the offenses occurred on or about April 14, 2013. As indicated in the Statement of Facts section of this brief, the charges arose from the same entry into Shaun Smagacz's home. Mr. Treadway did not lodge a double jeopardy objection in the trial court.

**The legal standards.**

U.S. CONST. amend V provides that no person "be subject for the same offence to be twice put in jeopardy of life or limb." The Fifth Amendment is applied to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 787 (1969). In addition, TEX. CONST. art. I, § 14, contains a similar

provision that is conceptually identical to its federal counterpart. *Stephens v. State*, 806 S.W.2d 812, 814-15 (Tex. Crim. App. 1990). In a case tried without a jury, jeopardy attaches when both sides have announced ready and the defendant has pled to the charging instrument. *Ex parte Ward*, 964 S.W.2d 617, 631 n. 18 (Tex. Crim. App. 1998).

The Double Jeopardy Clause protects against three different abuses: (1) a second prosecution for the same offense after an acquittal, (2) a second prosecution for the same offense after a conviction, and (3) multiple punishments for the same offense. *Illinois v. Vitale*, 447 U.S. 410, 415 (1980); *Ex parte Cavazos*, 203 S.W.3d 333, 336 (Tex. Crim. App. 2006). Mr. Treadway's claim complains about the third abuse. A double jeopardy claim may be raised for the first time on appeal when: (1) the undisputed facts show that the double jeopardy violation is clearly apparent on the face of the record, and (2) the enforcement of the rules of procedural default would serve no legitimate state interest. *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000). The critical inquiry is whether the appellate record clearly shows a double jeopardy violation. *Long v. State*, 130 S.W.3d 419, 424 (Tex. App. – Houston [14th Dist.] 2004, no pet.). In this case, it is clear from the record that Mr. Treadway was convicted twice for burglary stemming from the same entry. Therefore, the first prong is met. In addition, when a defendant is subject to multiple convictions in the same court, on the same day,

19

with the same judge, based upon the same evidence, the enforcement of statutory procedural default requirements "would have served no state interest whatsoever." *Shaffer v. State*, 477 S.W.2d 873, 876 (Tex. Crim. App. 1972). Therefore, this issue was not procedurally defaulted.

A defendant suffers multiple punishments for the same offense when he is convicted of more offenses than the Legislature intended. *Ex parte Cavazos*, 203 S.W.3d at 336. Burglary of a habitation in defined in Chapter 30, Title 7, of the Penal Code, which collects the "offenses against property." *Id.* at 337. The graveman of burglary is entry without the effective consent of the owner, with the required mental state. *Id.* The harm results from the entry itself, and the offense is completed once the entry is made. *Id.* The allowable unit of prosecution for burglary is the unlawful entry. *Id.*; *Davis v. State*, 313 S.W.3d 317, 342 (Tex. Crim. App. 2010).

**Application.**

As is apparent from the discussion above the, undisputed facts in this case show that a double jeopardy violation is apparent from the face of the record. The record shows only one entry. Mr. Treadway therefore could only have been convicted for one burglary. The evidence supporting the entry supporting these two convictions was identical. The same entry was used to support the convictions for the theft related burglary and the aggravated assault related burglary. Mr.

Treadway's double jeopardy rights were violated. He should have suffered only one conviction under these facts, not two.

One of the convictions in this case must be vacated. When a defendant has been convicted twice of the same offense, the remedy is to apply the "most serious offense" test and retain the conviction for the most serious offense. This is usually the offense for which the greatest sentence is imposed. *White v. State*, 395 S.W.3d 828, 832 (Tex. App. – Fort Worth 2013, no pet.)(citing *Ex parte Cavazos*, 203 S.W.3d at 338). However, in the present case, the two sentences are identical. In this situation, the appellate court will look to the degree of felony for each offense. *Id.* at 832-33 (citing *Bigon v. State*, 252 S.W.3d 360, 373 (Tex. Crim. App. 2008)).

Burglary of a habitation by attempting to commit and committing aggravated assault is a felony of the first degree. TEX. PENAL CODE §§ 30.02(a)(3) & (d) (West 2011). Burglary of a habitation by attempting to commit and committing theft is a felony of the second degree. TEX. PENAL CODE §§ 30.02(a)(3) & (c)(2) (West 2011). Therefore, the assault related burglary under Cause No. 2013-CR-11505 is the more serious offense and should be retained. The conviction in Cause No. 2013-CR-11506 should be vacated. *White v. State*, 395 S.W.3d at 833.

## Conclusion and Prayer

WHEREFORE, PREMISES CONSIDERED, the Appellant prays the Court of Appeals to uphold the points of error, reverse the judgments of conviction and render orders of acquittal (First and Second Points of Error); and/or vacate the judgment of conviction in Cause No. 2013-CR-11506 (Third Point of Error).

Respectfully submitted,


/s/ *Michael D. Robbins*
MICHAEL D. ROBBINS
Assistant Public Defender
Paul Elizondo Tower
101 W. Nueva St., Suite 310
San Antonio, Texas 78205
(210) 335-0701
FAX (210) 335-0707
mrobbins@bexar.org
Bar No. 16984600
ATTORNEY FOR APPELLANT

## Word Count Certificate of COmpliance

Pursuant to TEX. R. APP. P. 9.4(i)(1) & (i)(2)(B) (West 2015), the word count, from the beginning of the Statement of Facts until, but excluding, the signature block, is 4,259. The total word count is 6,044. The Appellate Public Defender's Office uses Microsoft Word 2010.

/s/ *Michael D. Robbins*
MICHAEL D. ROBBINS
Assistant Public Defender


## Certificate of Service

I HEREBY CERTIFY that a true and correct copy of the above and foregoing Brief For Appellant has emailed to the Bexar County District Attorney's Office, Appellate Division, Paul Elizondo Tower, 101 W. Nueva St., Suite 710, San Antonio, Texas 78205, on July 21, 2015.

/s/ *Michael D. Robbins*
MICHAEL D. ROBBINS
Assistant Public Defender